HAMILTON-BROWN SHOE COMPANY, Appellee, v. JOHN M. MERCER, Intervenor, Appellant.

1. General Assignment: FRAUD: COLLATERAL ATTACK. A general assignment for the benefit of creditors, made in conformity to the provisions of the statute, and valid upon its face, is not subject to collateral attack upon the ground that the assignor has included in the schedule of liabilities invalid claims in favor of relatives, with the intention of defrauding his creditors.

2. Attachment: VALIDITY: PRIORITY OF LIENS. An attaching creditor whose attachment has been declared invalid has no such interest in the attached property as will entitle him to question the validity of the lien of other attachments against the same property.

*Appeal from Des Moines District Court.*—HON. J. M. CASEY, Judge.

THURSDAY, FEBRUARY 4, 1892.

ACTION upon an account, aided by an attachment. There was a judgment for the plaintiff, and the intervenor appeals.—*Reversed.*

*Geo. S. Tracy* and *Newman & Blake*, for appellant.

*Dodge & Dodge* and *A. H. Stutsman*, for appellee.

GRANGER, J.—It is urged that the assignments of error are not sufficiently specific to justify their consideration. As to some of them, the

1. GENERAL assignment: fraud: collateral attack.

objection is well taken; but as to an instruction refused, and alone to be considered, we think the assignment sufficient.

II. Catherine Byrne is the defendant in this action, against whom the plaintiff company brought the action on an account for six hundred and forty-

2. ATTACHMENT: validity: priority of liens.

seven dollars and seventy cents, aiding the proceeding by an attachment on different grounds under the statute, showing a fraudulent disposition of her property. The defendant Byrne

answered, admitting, in substance, the account of the plaintiff, making certain denials as to the disposition of her property for which the attachment was issued,. and averring that on the thirtieth of November, 1889, she made a general assignment of her property for the benefit of her creditors to John M. Mercer, and on that date surrendered her property to him, and, in effect, denying her ownership of the property because of the assignment. She asked for damage because of the wrongful suing out of the attachment. A demurrer to the answer was sustained, and there was no further pleading by her nor exceptions to the ruling on the demurrer.

John M. Mercer, as assignee, filed his petition of intervention, claiming the goods by virtue of the assignment and his possession thereof at the time of the seizure by virtue of the attachment. The plaintiff answered the intervention petition, putting in issue the averments as to the assignments; averring that prior to November 30, 1889, Catherine Byrne was engaged in the retail boot and shoe business, and indebted to the plaintiff and others, and that in making the assignment she acted with a fraudulent purpose to aid her relatives in presenting unjust claims against her estate, and to defraud her just creditors. Disregarding the question of fraud, the evidence without dispute shows that John M. Mercer was before the commencement of this suit duly appointed, qualified and acting as the assignee of the estate of the defendant, and as such was in possession of the goods seized by virtue of the attachment. The intervenor asked the following instruction, which the court refused, and the refusal is the basis of an assignment on this appeal: "Plaintiff in this case, the Hamilton-Brown Shoe Company, is making a collateral attack upon the assignment, and upon assignee's title to said property. This cannot be done, and your verdict must be for the intervenor."

The question thus presented meets with earnest

contention by the parties, and is certainly important as bearing upon the general practice of the state. The briefs of counsel and an examination of the cases cited indicate a decided conflict of authority on the question in other states; but it is largely accounted for because of the different statutory provisions under which the decisions were made. After a careful examination, we reach the conclusion that the court erred in refusing the instruction, and will state our reasons therefor. It is likely true, as counsel seem to think, that much depends upon whether or not the property, when taken under the attachment, was in custody of the law, and, if so, much of the contention in support of the present proceeding is removed. See, in support of such a rule, *Lehman v. Rosengarten*, 23 Fed. Rep. 642, which case cites *Covell v. Heyman*, 111 U. S. 176, 4 Sup. Ct. Rep. 355; *Krippendorf v. Hyde*, 110 U. S. 276, 4 Sup. Ct. Rep. 27; and *Freeman v. Howe*, 24 How. 450. Whether property is in custody of the law or in that of a trustee, so as to be liable to collateral attacks, depends largely upon the statutory provisions under which the trustee acts in the discharge of his duties. By the appellee we are cited to Wait on Fraudulent Conveyances [2 Ed.] section 316, wherein it is said: "The property in the possession of an assignee is not *in custodia legis*, for the reason that the assignee is not an officer of the court, but is a trustee, bound to account according to the terms of the instrument; and his authority depends upon the validity of the assignment, and is not conferred by the court." This may be said to be a fair statement of the facts under which, and the reasons why, such property is said not to be in the custody of the law. Even under such a statement the authorities are not harmonious. The text above quoted takes for its support *Adler v. Ecker*, 1 McCrary, 256, 2 Fed. Rep. 126, and the decision is based on the Minnesota statutes. The supreme court of Minnesota, in the case of *Second Nat. Bank of St. Paul v. Schranck*,

44 N. W. Rep. (Minn.) 524, in construing the same
statute, says: "When the assignment is perfected,
and to some extent at least prior thereto, its entire
subject-matter,—all that is involved,—including the
assigned estate, passes under the jurisdiction of the
district court *ipso facto*, immediately, and without any
further act, the assigned property is in the custody of
the law." The same rule is announced in *Wilson v.
Aaron*, 23 N. E. Rep. (Ill. Sup.) 1037, and in *Scott v.
McDaniel*, 3 S. W. Rep. (Tex. Sup.) 291. The con-
clusions are announced under statutes certainly not
more favorable to such a conclusion than ours. Our
Code contains this somewhat unusual provision,
(section 2123): "The assignee shall at all times be
subject to the order and supervision of the court or
judge, and the said court or judge may, by citation and
attachment, compel the assignee from time to time to
file reports of his proceedings, and of the situation and
condition of the trust, and to proceed in the faithful
execution of the duties required by this chapter." The
law in effect determines the entire course of proced-
ure of the assignee in the management and disposition
of the property as far as the law could well direct it;
certainly as much so as in cases of receivers, adminis-
trators, etc., where the appointment comes directly
from the court.

We think, however, that it is not alone the source
from which the appointment comes that is to determine
the custody of the property,—whether that of the law
or the trustee,—but the extent of the law's supervision
and control of the property by virtue of the assign-
ment. In this respect, under our law, the assignee has
no independent authority. The limitation of our law
upon the common-law assignments leaves little room for
an assignor to invest his assignee with discretionary
power, and particularly so as to procedure and distri-
bution, which embrace the substantial purpose of such
an assignment. As illustrating the rule announced by

Mr. Wait, that such property is not in the custody of the court, he says, in the section cited, speaking of the assignee: "He distributes the proceeds of the estate placed in his care according to the direction and under the sole guidance of the assignment, and the statutory provisions merely regulate and guard his exercise of an authority derived from the will of the assignor." Under our statute, the assignee "distributes the proceeds of the estate placed in his care" according to the dictation of the law. The primary authority of the assignee is derived from the assignment, for it is voluntary; but, when made, it puts in operation the provision of the law, which, through the agency of the court, guides, guards and controls the entire administration of the estate. We think, without doubt, that under our statute, where an assignment is regularly made, and the assignee is in possession of the property for the settlement of the estate, such property is in the custody of the law; but we are not to be understood as holding that an assignment, invalid or void, as contravening the provisions of the statute, will operate to place the assigned property in such custody. This conclusion is practically conclusive of the question presented by the assignment. In the Minnesota, Illinois and Texas cases before cited the holding is emphatic to the effect that such a proceeding is collateral and cannot be sustained. In the Minnesota case it is said in a syllabus by the court: "A deed of assignment, complete and regular on its face, purporting to have been made by virtue of the provisions of chapter 148, General Laws, 1881 (the insolvency act), although actually unwarranted by the existence of such facts as would alone justify such an assignment, cannot be attacked and assailed in a collateral proceeding."

It is, however, urged that the attachment proceeding has support in the decision of this court; but we think there is no case where the question has been presented and ruled favorably to the claims of the appellee upon

similar facts. We do not intend, by holding that this assignment cannot be attacked collaterally, to interfere or question the former adjudication of this court under section 2115 of the Code, which provides that "no general assignment of property by an insolvent, or one in contemplation of insolvency for the benefit of creditors, shall be valid, unless it be made for the benefit of all his creditors in proportion to the amount of their respective claims." In the case of *Burrows v. Lehndorff*, 8 Iowa, 96, and in a long line of decisions subsequently made, it is held that a creditor may disregard such an assignment, treat it as void and proceed to attach the property, the same as if no assignment had been made. But the case at bar is not like the cases referred to. It is not claimed that there is any preference given to any creditor. The assignment on its face purports to be an assignment for the benefit of all the creditors. The mere designation of persons as creditors in the schedule, who may not have valid claims, does not render the assignment void. It is expressly provided by section 2124 of the Code that "no assignment shall be declared fraudulent or void for want of any list or inventory," and surely it ought not to be declared void because creditors are listed who do not have valid claims. To sum up the whole case: The plaintiffs have ample protection against the claims complained of under section 2121 of the Code, wherein they are authorized to appear and contest every claim that is filed. They cannot be allowed, by attachment, to gain the advantage of being declared preferred creditors by alleging that some of the claims listed are fraudulent. It appears from the act that there are some seventeen other creditors, whose claims are not questioned, amounting in the aggregate to some three thousand dollars. If the claim of the plaintiff should be preferred by attachment to such creditors, it would acquire an unjust advantage in the distribution of the results. This cannot be allowed. The instruction asked, or one of like import, should have been

given. This holding renders it unnecessary to consider other assignments on the intevenor's appeal.

III. One Lyman Cook was also an intervenor, and asked against the defendant Byrne a judgment for rents which he claimed to be a preferred lien on the goods attached by virtue of a landlord's lien. The court gave judgment against the defendant for the amount of three hundred and sixty-two dollars, and preferred the lien therefor to that of the attachment of the plaintiff. The plaintiff company alone appeals from the order. No question is made as to the correctness of the judgment against the defendant. The intervention by Cook presented the question of a priority of liens with the plaintiff company. The effect of our holding is to dismiss the plaintiff's attachment, and hence it has no such interest as will permit it to question the correctness of the judgment in favor of intervenor Cook.

The judgment, on the plaintiff's appeal, is AFFIRMED; on the appeal of the intervenor, Mercer, it is REVERSED.