IN RE ASSIGNMENT OF JONES & RICARD.

E. H. EMERY, Assignee, Appellee, v. A. C. LEIGHTON, Intervenor, Appellant.

APPEAL AND ERROR: Abstracts—Sufficiency—Presumption. An
1 abstract need not necessarily refer to the bill of exceptions, nor recite the preservation of the evidence, nor be certified by counsel, to be correct. The correctness of the abstract and the

fact that the evidence has been properly preserved will be presumed, in the absence of denial or correction.

**APPEAL AND ERROR:** Exceptions—Bills of Exception—Preparation. A proper bill of exceptions may consist either of the literal, shorthand report of the trial, as provided by Section 3675, Code, 1897, duly certified by the judge and reporter, or of the more abbreviated form, signed by the judge alone, at or after the close of the trial, as provided by Section 3749, Code, 1897.

**LANDLORD AND TENANT:** Rent—Lien—Priorities—Assignee for Benefit of Creditors. An assignee for the benefit of creditors takes the property subject to the landlord's lien for rent then due, plus the rent for a maximum of six months after sale by the assignee, and may not, even under requested and granted orders of court, continue the assigned business, and thereby create any claims (other than labor claims) which will have priority over the said amount admittedly due the landlord for rent, even though the landlord did not object to the orders continuing said business, nor to the order for the sale of the property. (Sec. 2992, Code, 1897.)

**ASSIGNMENTS FOR BENEFIT OF CREDITORS:** Administration of Assigned Estate—Continuing Business—Landlord and Tenant. A landlord may not prevent an assignee for the benefit of creditors from continuing, under orders of court, the assigned business, on the leased premises, during the term of the lease.

**LANDLORD AND TENANT:** Rent—Lien—Enforcement—Assignment for Benefit of Creditors. A landlord, for the purpose of enforcing his rent lien on property in the hands of an assignee for the benefit of creditors, may proceed (1) by intervention in the assignment proceedings for a sale of the property, or (2) by filing his claim for rent with the assignee—may proceed under any recognized and orderly judicial procedure, except to seize the property on judicial process. (Secs. 3075, 3594, Code, 1897.)

**ASSIGNMENTS FOR BENEFIT OF CREDITORS:** Administration of Assigned Estate—Orders of Court. An assignee for the benefit of creditors should keep carefully within his authorizing court orders.

**LANDLORD AND TENANT:** Rent—Lien—Enforcement—Property Chargeable. A landlord may insist on the satisfaction of his rent claim out of *funds* in the hands of an assignee for the benefit of creditors, which funds represent the proceeds of rent-

encumbered property, even though the rent lien exists on other property in the hands of the assignee which the latter has not yet converted into money.

*Appeal from Wapello District Court.*—SENECA CORNELL, Judge.

MARCH 12, 1918.

JONES & RICARD, who had operated a restaurant known as the Imperial Grill in Ottumwa for about three months, on September 15, 1916, filed a general assignment for the benefit of creditors to E. H. Emery, as assignee. Notice such as required was given, and he duly qualified. The building occupied belonged to A. C. Leighton, and had been leased by him to Jones & Ricard at a monthly rental of $125, payable monthly in advance. Rent accrued at the time of the assignment amounted to $132.50, and the rent during the six months following would amount to $750, as the lease commenced January 12, 1916, and extended until September 20, 1920.

The assigned property consisted of "leasehold, soda fountain carbonator, steam table, cigar cases, ice box, buffet, eating and other tables and chairs, candy case, store pastry, oven, work table, water heater, phonograph and discs, urns, lighting fixtures, linen, silver and tableware and dishes, glassware, tools and appliances, cash register, fans, typewriter, safe, food provisions, supplies and stock in trade, and any and all personal property on said premises or connected therewith and pertaining to said business;" and the place was described as the southeast corner of Market and East Second Streets in the city of Ottumwa, Iowa, and the business, as general restaurant; also, the SE 12 feet of Lot 113 and the NW 33 feet of Lot 112, Block 7, city of Ottumwa, Iowa, subject to a mortgage of $3,000 to bank. The equity in said property is estimated by the assignee to be worth about $1,250, but assignee has so far been unable

to find a purchaser for the same. The estimated value of this property, as found in the inventory, was $2,885.94, together with $21 in cash, $221.62 in accounts, and the lot, subject to mortgage, estimated to be worth $1,250, or $5,378.66 altogether.

On the day the assignment was filed, the assignee applied to the district court for an order authorizing him to continue the business, representing that the furnishings, fixtures, etc., were new; that closing the business "would result in loss in trade and income and in prestige; whereas, by keeping it a going concern, some net revenue may be derived, and the property would command a much higher figure at sale as a going concern than as a dead one." He further represented that he had "not sufficient cash to pay help or buy the supplies necessary for operating the business;" that he had consulted the creditors, and the consensus of their opinion was in favor of conducting the business "experimentally for a while, say a month, under the order of court;" and he recommended that an order be entered allowing him "to borrow sufficient money to conservatively operate said business for a month, same to be paid in full, and not pro rata, out of the first proceeds or assets out of the estate or of the receipts." Thereupon, the court entered "an order permitting him to conduct the business as a going concern for approximately a month; and the court, being informed in the premises, does hereby order that the assignee continue the business for a period of not exceeding 30 days, and to that end may employ necessary help and purchase supplies and incur an indebtedness of not exceeding $200, to be paid as a preferred claim out of the proceeds of the business or the property covered by the deed of assignment." On oral application, October 14, 1916, an order was entered by the court that "the assignee in this cause be and he is hereby authorized to continue business under former order for one week further." On October 21,

1916, another order was entered, on oral application, "that the assignee in this cause be and he is hereby ordered to continue business under former order for a period of 30 days from date." On December 20th of the same year, the assignee reported that operating the restaurant had resulted in financial loss, and had been discontinued, and recommended that the personal property be sold separately or in bulk at public or private sale, and called the court's attention to the fact that about $565 in rent had become due and remained unpaid, and prayed that the landlord be cited to show cause, if any he had, why the court should not authorize such sale," and hold the proceeds thereof subject to the landlord's lien, in such sum and for such term and upon such terms and conditions as the court may determine." The landlord, Leighton, appeared on the same day, and waived all objection to the sale, insisting, however, "that, as to the full proceeds of all of such property so sold, the court should require the assignee to hold and apply the same first to the payment of said rent due and to become due for such period as the court may fix."

The court ordered the assignee to sell the property, as prayed, subject to its approval, and that the proceeds "be held by the assignee pending the further order of the court determining the rights of the landlord and of all other persons thereto." The personal property was sold for $1,688.62. Out of this, the assignee first paid $140 for wages of employees, and he so reported, and that he had advanced $183.71, and paid bills out of the business in the experimental conducting of the business, $1,661.45, and had contracted bills which were unpaid, aggregating $1,029.07. He claimed $100 for his services and a like amount for his attorney, and stated that there was owing accrued rent to Leighton $565, and $317.50 to accrue before the expiration of six months after the making of the assignment. He acknowledged receipt of $1,897.62 in prosecuting the business,

and that he had in bank $96.72, of which $52 had been collected on accounts. On this report, he prayed that the moneys in his hands be applied preferentially in the following order: (1) The indebtedness of $1,029.07, incurred in continuing the business; (2) reimburse assignee the $183.71 advanced by him, and labor claims of $140; (3) costs, including a fee of $100 for his services; (4) attorney's fee of $100; (5) rent due landlord, A. C. Leighton; and (6) general creditors. On March 19, 1917, the court entered an order directing the assignee, first, to pay the third and fourth of the above items; second, the labor claims; third, reimburse himself the $183.71; fourth, reimburse himself any other items advanced; fifth, pay outstanding debts incurred in conducting business; sixth, rents owing Leighton; and seventh, the general creditors. As this order was entered within three months from the filing of assignee's report of claims, it was, by the order of March 31st following, suspended, and assignee directed not to make any payments until "further order and proceedings of court." On the same day, Leighton filed objection that he had a lien on the property for the rent owing him; and later, on April 27, 1917, filed a petition of intervention, in which he showed the rent due and to become due, as heretofore stated, alleged that property on which same was a lien, valued at $2,000, came into assignee's possession, was sold under order of court, as heretofore recited, and that proceeds in excess of $1,600 were derived therefrom; and he prayed that, after the satisfaction of the labor claims in the sum of $140, the court direct payment of rent from the proceeds of said sale. Upon submission of the objection and this petition, the court rescinded the order of March 31, 1917, and confirmed that of March 19, 1917, and found that:

"The landlord, A. C. Leighton, has a just claim against said estate in the sum of $882.50 for rent of said restaurant premises at the southeast corner of Market and East Sec-

ond Street in the City of Ottumwa; that part of said rent
was past due and delinquent at the time the court, by its
orders of September 15, 1916, October 14, 1916, and October
21, 1916, authorized the assignee to continue the business;
that, by not exercising his right to assert landlord's lien,
and by not objecting to said orders, and by his appearance
in writing, filed December 20, 1916, to application of the as-
signee for rule on him to show cause why the assignee
should not be permitted to sell the personal property, the
landlord is now estopped to assert priority of his lien over
costs of the estate, duly proven preferred labor claims, re-
imbursement to the said E. H. Emery for $183.71 moneys
advanced to himself as assignee, under order of court, and
indebtedness incurred by the assignee in the sum of, to wit,
$1,029.07, for the employment of necessary help and pur-
chase of supplies in conducting said business under said
orders of court. That, after payment of the foregoing
items out of proceeds realized by assignee from sale of
property of the estate, now confirmed, the assignee is or-
dered to apply the balance, if any, upon said landlord's
claim. And it further appearing that the assignee holds,
as the property of said estate taken from said restaurant
premises, one coffee urn, one ice box in sections, electric
light fixtures, and tableware, consisting of knives, forks,
etc., the same are hereby impressed with a landlord's lien
in favor of said A. C. Leighton upon his said claim. If the
said A. C. Leighton and assignee can agree on prices at
which such articles may be sold, the assignee is author-
ized to sell same, and apply the proceeds upon said land-
lord's lien. If they cannot agree, or find a purchaser,
either may apply to the court for order to cover. The court
further orders that if, by the foregoing, the said landlord's
claim is not paid in full, that then, out of the proceeds,
if any, of sale by the assignee of the equity in the residence
property, 425 West Fourth Street, Ottumwa, comprising

part of said estate, the assignee shall first pay the balance of the said landlord's claim, before the said proceeds are used for any other purpose except necessary costs, unless the court, upon notice, may order to the contrary."

A. C. Leighton appeals.—*Reversed.*

*Work & Work,* for appellant.

*Chester W. Whitmore,* for appellee.

LADD, J.—I. Counsel for appellee challenge the sufficiency of the record, in that the abstract is not certified by the attorneys of appellant, and does not refer to the bill of exception, nor recite the preservation of the evidence. None of these were essential to the review of rulings complained of. The printed abstract is presumed to contain the record. Section 4118 of the Code. In the absence of denial, correction, or statements therein to the contrary, the abstract is presumed to contain such evidence and other matters of record with sufficient completeness to enable the court to pass upon the questions presented. *McGillivary Bros. v. Case,* 107 Iowa 17. This necessarily includes the presumption that the steps necessary to make the evidence of record have been taken. *Kirchman v. Standard Coal Co.,* 112 Iowa 668. See *Hensley v. Davidson Bros.,* 143 Iowa 742, and other decisions too numerous for citation, declaring that such an abstract is presumed to contain everything essential to the determination of all points raised in argument on appeal.

**1. APPEAL AND ERROR: abstracts: sufficiency: presumption.**

II. The appellee, however, "denies that the evidence upon hearing of intervenor's objections was preserved of record; admits the court signed a bill of exceptions filed May 26, 1917, reciting certain reports and orders were introduced in evidence and that certain oral concessions were

**2. APPEAL AND ERROR: exceptions: bills of exception: preparation.**

made, etc.; but avers the documents were not at the time identified as exhibits, and no reporter was present, and evidence, if any, in the way of concessions or otherwise was not preserved."

Appellant did not undertake to preserve the record and the exceptions to the court's rulings, as might have been done, under Section 3675 of the Code. Instead, he resorted to that prescribed in Code Section 3749, directing the manner of taking an exception, and providing that:

"It may be embodied in a bill of exceptions to be filed within thirty days after the final determination of the case, or within a reasonable time thereafter, to be fixed by the court, not to exceed ninety days therefrom."

Here, exception was taken to the ruling of the court on the intervenor's objections to the report of the assignee and the court's order, as previously entered. This is made clear in the bill of exceptions, as well as in the record on which the ruling was based. A bill of exceptions has been variously defined. See 5 Cyc. 706. It is a written statement, settled and signed by the trial judge, of what the ruling was, the facts in view of which it was made, and the protest of counsel, according to *People v. Torres,* 38 Cal. 141. In *St. Croix Lumber Co. v. Pennington,* 2 Dak. 467 (11 N. W. 497), a like definition is to be found. See also *Sacket & Shelton v. McCord,* 23 Ala. 851, and *Galvin v. State ex rel. Crouch,* 56 Ind. 51.

The purpose of the bill is to put the points decided upon the record in such a way as to bring them before the appellate tribunal for review. Now defendant denies that the evidence upon the hearing was preserved of record, but the court certified that its ruling was made upon the evidence referred to therein. The preservation in the bill of exceptions was sufficient.

Again, defendant says that documents were not identified as exhibits. This was unnecessary, if sufficiently iden-

tified otherwise. A reporter is not essential to the organization of the court, and that one may not have been present did not prevent the preservation of the record such as it was. It is further asserted that "evidence, if any, in the way of concessions or otherwise, was not preserved." But in this appellee is mistaken; for several concessions are recited in the bill of exceptions. That the abstract is correct and sufficient is not questioned. See *Howerton v. Augustine,* 145 Iowa 246.

Many, if not most, of the early cases were submitted to this court on bills of exceptions signed by the trial judge, without the advantage of a record made by a stenographer, or a transcript of such record. As the trial progressed, bills of exception, exemplifying particular rulings and exceptions taken thereto, were presented to the trial judge, and by him signed; and on the record so made up, the cause was brought to this court for review. Though this method has been superseded to such an extent by the mode prescribed by Section 3675 of the Code that the former method is seldom resorted to, it is quite as effectual in making up the record for review in this court. *In re Tobey's Estate,* 112 Iowa 581. The cases cited by appellee are not in point; for in each, the record in some respect was not preserved, either as required by Section 3675 or Section 3749 of the Code. See *Dolan v. Sammons,* 147 Iowa 466, and *State v. Owens,* 109 Iowa 143. Notwithstanding the denial, the bill of exceptions sufficiently preserved the record for submission to this court of the rulings complained of.

III. Under the assignment by Jones

3. LANDLORD AND TENANT: rent: lien: priorities: assignee for benefit of creditors.

& Ricard of their property for the benefit of creditors to Emery as assignee, the latter succeeded to the rights of his assignors; or, as aptly stated by the authorities with reference thereto, he merely stepped into the shoes of his assignors, and took such property subject to all existing

liens. *Meyer v. Evans*, 66 Iowa 179; *Davenport P. Co. v. Lamp*, 80 Iowa 722; *Wackerbarth v. School Dist.*, 157 Iowa 614; *Des Moines Bridge & Iron Works v. Plane*, 163 Iowa 18, 22; *Gluck Co. v. Therme*, 154 Iowa 201.

If, then, the lien of the landlord was valid against Jones & Ricard, it was equally valid and binding as to the assignee for a term commencing January 12, 1916, and terminating September 20, 1920. On this lease, rent to the amount of $132.50 had accrued, which was unpaid. The rental was $125 per month; so that, for the ensuing six months, it would amount to $750. Under Section 2992 of the Code, this much, at least, was a lien on the personal property made use of in the leased building; for, besides creating the lien, that section provides that, in event such property be sold "by an assignee under a general assignment for benefit of creditors, the lien of the landlord shall not be enforceable against said stock or portion thereof, except for rent due for the term already expired, and for rent to be paid for the use of demised premises for a period not exceeding six months after date of sale." The assignee took over the property, then, subject to the lien of the landlord for at least $882.50. On the day of the assignment, he applied to the court for an order permitting him "to borrow sufficient money to conservatively operate said business a month," on the ground that there was "not sufficient cash to pay help and buy the supplies necessary for operating the business. Some net revenue may be derived, and the restaurant would sell better as a going concern." The court authorized the assignee to "continue the business for a period not exceeding 30 days, and to that end may employ help and purchase supplies and incur an indebtedness of not exceeding $200, to be paid as a preferred claim." Subsequently, two orders were entered, one permitting him to continue the business 7 days, and the other, 30 days, "under the former order." The business was continued 63 days,

during which time the assignee paid out $1,845.16 and took in $1,921.34, and besides, incurred an indebtedness for supplies of $1,029.07, and for help, $140, without paying a cent for the use of the building in which he was experimentally conducting the business! This was a loss of approximately $1,245.52, to say nothing of about $262 in rent, in doing about $2,000 worth of business! Why, in conducting such an experiment, claims for furnishing supplies should be preferred over the claim for the use of the building, is not apparent. The court seems to have thought that the landlord had in some way estopped himself from asserting his lien; for the final order recites:

4. Assignments: for benefit of creditors: administration of assigned estate: continuing business; landlord and tenant.

"That, by not exercising his right to assert landlord's lien, and by not objecting to said orders, and by his appearance in writing, filed December 20, 1916, to application of the assignee for rule on him to show cause why the assignee should not be permitted to sell the personal property, the landlord is now estopped to assert priority of his lien over costs of the estate, duly proven labor claims, reimbursement to said E. H. Emery for $183.71, moneys advanced by himself as assignee, under order of court, and the indebtedness incurred by the assignee in the sum of, to wit, $1,029.07, for the employment of necessary help and supplies in conducting the business under the orders of court."

The trouble with all this is that the landlord, A. C. Leighton, had the right to rely on his lien, and might not prevent, by objecting, the continuance of business in the building. He did not consent thereto, and there is no showing that he was aware that the assignee was operating the restaurant at a loss, especially of so large an amount. Nor was there any better basis for an estoppel in the proceedings of December 20, 1916. Leighton appeared in response to citation, and, consenting to the sale, insisted that

"the proceeds of all such property so sold, the court should require the assignee to hold and apply the same to the payment of said rent due and to become due for such period as the court may fix."

As we understand the record, the land-lord had not filed a claim against the estate, but, up to this time, had relied on his statutory lien as security for payment. The assignee took the property subject thereto; and surely, Leighton had done nothing up to that time to relieve the property of his lien. He might then have proceeded through petition of intervention in the assignment proceedings to enforce it against the property. So doing would not assail the validity of the assignment; and though the property, being *in custodia legis,* might not have been seized pending foreclosure, sale to satisfy the lien, either through the assignee or by the sheriff, might have been ordered. On the other hand, he might have filed his claim, and relied on the satisfaction thereof through the distribution of the proceeds of the assets by the assignee. *Hamilton-Brown Shoe Co. v. Mercer,* 84 Iowa 537; *Garner v. Fry,* 104 Iowa 515. As said in the last cited case:

5. LANDLORD AND TENANT: rent: lien: enforcement: assignment for benefit of creditors.

"The court has ample power to protect all liens and priorities by appropriate orders in the distribution of moneys derived from the sale of the assignor's property, and it is optional with the mortgagee whether he will enforce his lien against the property or rely on the protection thus afforded."

Up to this time, Leighton had waived nothing by omitting to file any claim, and we see no reason why he might not, while insisting on his lien and its satisfaction out of the property, consent to the sale by the assignee. This was tantamount to allowing the lien to follow the fund derived by the sale of the property, and could have prejudiced no one. *In re Assignment of Windhorst,* 107 Iowa 58. This

being so, there was no basis on which to rest a finding that
Leighton was estopped to assert his claim and lien.   Leigh-
ton had filed no claim against the assignee, under Section
3075 of the Code.   He was not claiming under the assign-
ment, but asked payment of his lien, independent thereof.
Though he consented to sale on December 20, 1916, it was
with the assertion of his lien for an amount not contro·
verted by the assignee; and the order of court was that
the "proceeds be held by the assignee pending the further
order of the court determining the rights of the landlord
and all other persons thereto."   No argument is required to
show, in such case, that the landlord's lien followed the
fund derived from the sale of the property.   See *In re As-
signment of Windhorst,* supra.   Nothing then had hap·
pened to divest the intervening landlord of his prior lien for
rent; and as his right to priority over all claims, save
those for wages excepted in the prayer of his petition, had
in no manner been divested, he should have been awarded
payment of $862.50 at least, out of the fund derived from
the sale of the property, after satisfaction of the labor
claims.   What we have said disposes of appellee's sugges-
tion that the landlord should have appealed from the
orders for continuing the business.   We do not concur in
appellee's conclusion that the court erred in entering these.

6. Assignments
for benefit
of creditors:
administration
of assigned
estate:
orders of
court.

The error was that of the assignee in
persisting in the operation of the restau-
rant when he must have known this was
being done at such a loss as to render the
continuance of the business inexpedient.   The court did
not require, but merely permitted, the continuance of the
business; and the assignee not only was not bound to,
but, in the proper discharge of his trust obligation, should
not have continued the same longer than a person of or-
dinary prudence would have done under like circumstances.
Moreover, the assignee should not have incurred an indebt-

edness to exceed $200; for, though the orders might have been construed otherwise, when considered in connection with the application they plainly meant that he might become indebted to that amount for necessary help and supplies. These were the essentials, as represented by him, to the operation of the restaurant. He was requested to incur an indebtedness for no other purpose. Doubtless this was thought sufficient, in view of receipts likely to be taken from the business; but in any event, he was not given authority to incur an indebtedness for any purpose to exceed the amount stated, for the "assignee shall be at all times subject to the order and supervision of the court or judge." Section 3080, Code.

7. LANDLORD AND TENANT: rent: lien: enforcement: property chargeable.

Appellee also suggests that the landlord may not insist upon payment from the fund so long as some property to which his lien attaches remains unsold. Why prefer one to the other, since his lien covers both? Other creditors may resort to that of either not exhausted, out of which to satisfy their claims. There is nothing in the point. The order for the distribution of the fund in the hands of the assignee is reversed, in so far as the claim of Leighton against the assignee is concerned, and the same ordered first paid, after the discharge of the labor claims.—*Reversed*.

PRESTON, C. J., EVANS and SALINGER, JJ., concur.