STATE OF IOWA, ex rel. JOHN FLETCHER, Attorney General, Plaintiff, v. SOUTHERN SURETY COMPANY of New York, Defendant, RAY MURPHY, Ancillary Receiver, Appellee, LOUIS H. PINK, Superintendent of Insurance of the State of New York, Intervener, Appellant, BERNADINE McQUILLEN, Claimant and Creditor, Appellee.

No. 43605.

MAY 4, 1937.

Hallagan, Fountain, Cless & Stewart and Cook & Balluff, for intervener, appellant.

Parrish, Guthrie, Watters & Colflesh, for ancillary receiver, appellee.

Kelly, Shuttleworth & McManus and Kenline, Roedell & Hoffman, for claimant and creditor, appellee.

SAGER, J.—An exhaustive examination of the record in this case persuades us that the trial court had before it a question of outstanding importance. We proceed to state the reasons why we may not express an opinion on the correctness of the trial court's action and why its decision must await another occasion.

The Southern Surety Company, a foreign corporation with its principal offices in New York, was authorized to transact business in this state, and did so for a considerable period. On March 22, 1932, the courts of the parent state, finding the corporation insolvent, dissolved the corporation, appointed appellant liquidator, and vested in him the title to all the assets of the company wherever situated. The next day the attorney general of this state started the proceedings which resulted in the controversy before us, and in which Clark was appointed ancillary receiver of the assets of the defunct company in this state, the order of appointment directing the receiver to conserve the assets until further orders of the court. Appellee Murphy succeeded Clark as receiver and is now acting as such.

During the course of the proceedings pending in the courts of this state various creditors of the surety company filed their claims, which were allowed at various times. In addition to one filed by McQuillen, who is one of the appellees herein, there were filed and allowed the claims of one Popp, in his capacity as trustee; claim of Wetterling; claim of the Ottumwa Sand Company; claim of Kelly; claim of MacX Feed Milling Company. These claims were all filed within the time fixed by the court and, as stated, duly allowed. There was likewise filed the claim of one Bates, superintendent of banking, which he insists was allowed. Appellant strenuously asserts that it was not allowed. We do not deem it necessary to decide this controversy in the light of what follows.

When the appellant intervened in the proceedings pending in this state the trial court directed that a notice of the filing of such petition be given to all creditors whose claims had been

allowed and to all creditors whose claims had been disallowed but who had filed objections to such disallowance, fixing the time within which such objections to the petition of intervention might be filed. Notice having been served in compliance with this order, various claimants filed objections, among them the following: Popp, trustee; Wetterling, whose claim was first disallowed and later allowed; Ottumwa Sand Company; MacX Feed Milling Company; Kelly; and D. W. Bates, superintendent of banking. On December 31, 1935, the district court set down for hearing the petition of intervention and again directed notice to be given of the date fixed. On January 8, 1936, after due notice, the matter came on for hearing and was submitted on stipulation of facts entered into by the attorneys for McQuillen, appellee, Ray Murphy, local receiver, and Louis H. Pink, the New York liquidator and intervening appellant herein. No other parties appeared to take part in the hearing. On the same day, January 8, 1936, the court entered its further order directing that notice be given to all creditors who had filed resistances to the petition of intervention to file written briefs on or before the 18th day of January, 1936. Thereafter, on the 17th day of February, 1936, the trial court entered of record the order from which this appeal was attempted, which order denied and dismissed the petition of intervention. On the 4th day of March, 1936, intervening appellant Pink attempted to appeal from the final order of the court by serving notice of appeal upon Ray Murphy, local receiver, McQuillen, appellee, and the clerk of the district court of Polk county. No notice of appeal was served upon Fletcher, the plaintiff, nor upon his successor in office; and no notice was served upon Popp, trustee, Wetterling, Ottumwa Sand Company, Kelly, MacX Feed Milling Company, or D. W. Bates, superintendent of banking.

McQuillen, appellee, moved to dismiss this appeal on the ground that, no notice having been served on the parties mentioned, this court has no jurisdiction to entertain or decide this appeal. Similar motions were filed by Popp, trustee, and by Bates, superintendent of banking. These motions are met by a resistance on the part of the New York Liquidator, which resistance, in effect, admits McQuillen's statement of what the record shows except in so far as it has to deal with the claim of Bates, superintendent of banking. This claim appellant says was not filed or allowed.

In effect, appellant's resistance is based on the theory that, these various claimants having been notified of the time when the court would hear the matter of intervention on the stipulation above referred to, they thereby were in default in such sense that they are not now in a position to claim that notice of appeal should have been served upon them. This idea is elaborated somewhat by the claim that they permitted by their attitude, their interests to be represented by Ray Murphy, local receiver, and are bound by the results which followed the efforts of such receiver. It is claimed further that, by acting as they did, the claimants had abandoned their separate resistances and were therefore not "adverse parties" within the meaning of Code section 12837. Appellant likewise claims something for the fact that the findings of the trial court, by setting out the names of the parties who had appeared at the hearing and those who had not, determined that those who took no part in the hearing had thereby, in effect, withdrawn from the controversy and were not longer adversary parties.

In justification or excuse for not having made the attorney general upon whose relation this cause was started a party, appellant says that the only part the attorney general took was to set the machinery of the law in motion by instituting these receivership proceedings; that Fletcher having been succeeded in office by another attorney general, neither the original plaintiff nor his successor had any such interest in the outcome as would make them "adverse parties" within the meaning of the Code section above cited. In a word, appellant's position on these motions to dismiss is that only those who took an active part in the hearings on the petition of intervention and the stipulation of facts upon which the trial court made its order had any adverse interest or had any right to be considered in the further progress of this case to this court.

We address ourselves to the question thus presented.

Section 11174 of the Code provides:

"Any person who has an interest in the matter in litigation, in the success of either of the parties to the action, or against both, may become a party to an action between other persons, either by joining the plaintiff in claiming what is sought by the petition, or by uniting with the defendant in resisting the claim of the plaintiff, or by demanding anything adversely to both

the plaintiff and defendant, either before or after issue has been joined in the cause, and before the trial commences.''

The method of taking an appeal to this court is set forth in Code Section 12837, as follows:

''An appeal is taken and perfected by the service of a notice in writing on the adverse party, his agent, or any attorney who appeared for him in the case in the court below, and by filing said notice with return of service indorsed thereon or attached thereto with the clerk of the court wherein the proceedings were had, stating the appeal from the same, or from some specific part thereof, defining such part.''

An examination of our decisions indicates that the question before us has been met with more or less directness, and has been decided adversely to the position taken by the appellant-intervener in his resistance to the motions.

We are content to base our disposal of the question on In re Assignment of Lounsberry, 208 Iowa 596, from which we quote at length, beginning at page 598, 226 N. W. 140:

''Appellant in argument says that it 'has nowhere contended that the parties moving to dismiss were not interested in the appeal; but appellant has contended, and still contends, that the interests of all the creditors and claimants in this estate are and have been fully represented and protected by the assignee for the benefit of creditors, and the service of the notice of appeal upon the assignee, such notice having been addressed to him, is sufficient * * * .'

''It may be conceded that it was the duty of the assignee to appear and resist the appellant's application, at least if the assignee believed that such application ought not to be sustained. It is provided by section 12730, Code of 1927:

'' 'Any person interested may appear within three months after such report is filed and contest the claim or demand of any creditor by written exceptions thereto filed with the clerk, who shall forthwith cause notice thereof to be given to the creditor, * * * returnable at the next term, at which term the court shall proceed to hear the proofs and allegations of the parties in the case, and render such judgment thereon as shall be just * * *.'

''By express statute, therefore, the creditors whose claims

were allowed, and who were, therefore, interested, were given the right to make themselves parties to the proceedings and contest appellant's claim. They were not left dependent upon the assignee, or upon his exercise of his duty. They had the statutory right to appear and contest, and to contest on their own account, and in their own right and interest. Reard v. Freiden, 184 Iowa 823, 169 N. W. 245; Johnson v. Johnson, 132 Iowa 457, 107 N. W. 802.

"The assignee had no right to control their objections,— no right to dismiss or prejudice them or interfere with the proceedings thereon, or to obstruct rendition of judgment on them. The judgment sustained the creditors' own objections, as well as the objections made by the assignee, and was *pro tanto* the objecting creditors' judgment. The assignee in this state has the status of an officer of the court, analogous to that of a receiver. In re Assignment of Cuddy v. Becker, Mayer & Co., 146 Iowa 250, 254, 124 N. W. 1071; Hamilton-Brown Shoe Co. v. Mercer, 84 Iowa 537, 51 N. W. 415, 35 Am. St. Rep. 331. He is at all times subject to the order and supervision of the court, and has little discretionary power. Code of 1927, Section 12735; Hamilton-Brown Shoe Co. v. Mercer, 84 Iowa 537, 540, 51 N. W. 415, 35 Am. St. Rep. 331. Obviously the court would not undertake to limit or restrict the right of creditors to make contest and control their own proceedings expressly given to them by section 12730. The objectors (with the assignee) thereby procured a judgment which would finally bar the Des Moines National Bank from participating in the already deficient fund which the assignee held for distribution among the objectors and other creditors. The appellant's claim and application were against the fund in the hands of the assignee for distribution, which, on the face of the record, belonged to the creditors, including the objectors, whose claims had been allowed, and in which, on the face of the record, the Des Moines National Bank had no right to participate. Peterson, the Pocahontas Coal Company, and other objectors were parties to the litigation, adverse to the appellant. Farr v. Howerton, 184 Iowa 1049, 1052, 169 N. W. 394. They were present, objecting, resisting in their own persons, as they had the right to be, not only under the general intervention statute, but by the specific provisions of section 12730. A reversal of the judgment would adversely affect their rights, and service of notice of appeal upon

them was essential to the jurisdiction of this court. Farr v. Howerton, 184 Iowa 1049, 1052, 169 N. W. 394; Fairchild v. Plank, 189 Iowa 639, 650, 179 N. W. 64; Hafer v. Medford & C. L. R. Co., 60 Or. 354, 117 Pac. 1122, 119 Pac. 337. It probably would not be denied that, if the decision had been adverse to them, they would have had the right to appeal. Andrew v. Sac County State Bank, 205 Iowa 1248, 218 N. W. 24; In re Attorney General v. North American Life Ins. Co., 77 N. Y. 297. * * *

"If the creditors had not appeared and filed objections in their own behalf, but had permitted their defense to be made by the assignee, if they had not availed themselves of their right to make themselves parties, we would have a different question. In re Estate of Caldwell, 204 Iowa 606, 215 N. W. 615; Andrew v. Sac County State Bank, 205 Iowa 1248, 218 N. W. 24.

"Aside from statute, the general rule is that all parties who are interested in having the judgment sustained, or whose interests will be necessarily affected by a reversal, must be made appellees. 3 Corpus Juris 1014. In the application of this rule, it was held by a divided court in Koppel Industrial C. & E. Co. v. Lee, (C. C. A.), 3 Fed. (2d) 886, that general creditors, though they had filed objections to appellant's claim, were sufficiently represented by the receiver. Compare Seaboard Nat. Bank v. Rogers Milk Prod. Co., (C. C. A.), 16 Fed. (2d) 271. But in this jurisdiction, by force of statute, notice of appeal must be served on the 'adverse party.' Section 12837. Any party who would be prejudiced by a reversal is an adverse party, upon whom notice must be served, or the court will be without jurisdiction. State Sav. Bank v. Guaranty Abst. Co., 181 Iowa 1378, 151 N. W. 512, 165 N. W. 324; Taylor v. Woodburn Bank, 198 Iowa 772, 200 N. W. 208; Hafer v. Medford & C. L. R. Co., 60 Or. 354, 117 Pac. 1122, 119 Pac. 337."

■■■ As supporting the rule announced, and placing upon the appellant the burden of proving that parties not served will not be adversely affected, is First Tr. J. S. L. Bank v. Yarcho, 217 Iowa 95, at page 96, 250 N. W. 903, 904:

"The burden is on the appellant to show that the parties not served with notice of appeal are not necessary parties to the appeal, and that they will not be prejudiced or adversely affected in any manner by any order or decree of the appellate

court. And, if a reversal of the case or any other order or decree by the appellate court will prejudice or adversely affect any party to the action who has not been served with the notice of appeal, the appeal must be dismissed. Jenkins v. Beeler, 213 Iowa 501, 239 N. W. 474; Coggon State Bank v. Woods, 212 Iowa 1388, 238 N. W. 448; Read v. Gregg, 215 Iowa 792, 247 N. W. 199.''

The language of Taylor v. Woodburn Bank, 198 Iowa 772, at page 775, 200 N. W. 208, 210, seems to be directly applicable to the situation which confronts us. We quote:

''This is one of the cases where the judgment appealed from cannot be modified or reversed without injuriously affecting the interests of the Gammons. Under such circumstances, we cannot consider the appeal or enter a decree in this court without having jurisdiction of all of the parties, and without service of notice of appeal upon the Gammons. Without having the Gammons before us, we cannot take from them, by decree, the credit which the trial court gave them upon their indebtedness to appellee; nor can we modify the judgment against them, as we should in equity be required to do, if the proceeds of the certificates of deposit were to be given to appellant. Our cases seem to sustain this conclusion under a variety of circumstances. Hunt v. Hawley, 70 Iowa 183, 30 N. W. 477; Laprell v. Jarosh, 83 Iowa 753, 49 N. W. 1021; McCarty v. Campbell, 166 Iowa 129, 147 N. W. 131; Dillavou v. Dillavou, 130 Iowa 405, 106 N. W. 949; Clayton v. Sievertsen, 115 Iowa 687, 87 N. W. 412; In re Will of Down, 141 Iowa 268, 119 N. W. 703; Oskaloosa Sav. Bank v. Miller, 189 Iowa 393, 176 N. W. 629. See, also, State Savings Bank v. Guaranty Abst. Co., 181 Iowa 1378, 151 N. W. 512, 165 N. W. 324.''

The same view is expressed in Jenkins v. Beeler, 213 Iowa 501, 239 N. W. 474; and, by a little paraphrasing, it will be seen that this quotation exactly expresses our views on the situation before us.

Other cases might be cited, but we do not deem it necessary.

If it be desired to pursue the inquiry into other jurisdictions, attention is called to the note which appears to Colwell v. Union Central L. Ins. Co., 88 A. L. R. 409, at page 439, where the following language will be found:

"In most of the appeals from judgments rendered in insolvency proceedings, the various other nonappealing parties have been held to be adverse parties on whom notice of the appeal must be served in order to give the appellate court jurisdiction."

Following the text is a very large number of cases, including our own Lounsberry case, but we refrain from quoting further.

█▌█ It follows that McQuillen's motion to dismiss this appeal must be sustained.

We turn our attention to appellant's resistance to the motion to dismiss the appeal.

It would unnecessarily extend this opinion were we to analyze the various citations appearing in the brief, and we shall not attempt to do so. We have examined all the cases cited and find none which seems to call for a conclusion different from that above announced. In fact, it appears that these cases are so readily distinguishable as to make an analysis wholly unnecessary, and they are cited herein only so that those who wish may examine them to find in them a bearing upon the question before us which we have not been able to perceive. Belknap v. Belknap, 154 Iowa 213, 134 N. W. 734; Iowa Cord Tire Co. v. Babbitt, 195 Iowa 922, 192 N. W. 431; Fox v. Nolan, 165 Iowa 302, 145 N. W. 491; State ex rel. Adams v. Murray, 219 Iowa 108, 257 N. W. 553; Snyder v. Richey, 150 Iowa 737, 130 N. W. 922; Capital Food Co. v. Coal Co., 142 Iowa 134, 120 N. W. 704; Bonnot Co. v. Newman Bros., 108 Iowa 158, 78 N. W. 817; Daniels v. Butler, 169 Iowa 65, 149 N. W. 265; Dillinger v. Steele, 207 Iowa 20, 222 N. W. 564; Christie v. Life, etc. Co., 82 Iowa 360, 48 N. W. 94; In re Estate of Caldwell, 204 Iowa 606, 215 N. W. 615; Schoonover v. Osborne, 193 Iowa 474, 187 N. W. 20, 27 A. L. R. 465; Shea v. Shea, 220 Iowa 1347, 264 N. W. 590.

Appellant next argues that it was not necessary to make Bates, superintendent of banking, a party, for the reason that he was not the holder of an allowed claim as alleged by him. Since the case may well be decided without entering into a discussion of the controversy, we pass it.

█▌█ This brings us to the last, and the only other question which appears to merit consideration. This is appellant's claim that it was not necessary to serve notice of appeal on John

Fletcher, attorney general, or his successor in office, for the reason that they were not adverse parties as contemplated by the statute. We have already pointed out that this claim is based upon a theory which appellant's argument states as follows:

"The record before this court and in the court below fails to show in any particular where the then attorney general, the present attorney general, or the State of Iowa was in any way interested in or a party to the controversy under consideration in this appeal. An examination of the statute will readily disclose that the attorney general is merely the officer who initiates the proceedings against the defaulting insurance company, and that this was the function and duty that he performed in the instant case. Throughout the proceedings, within the contemplation of this appeal, the receiver, as the representative of the court and all creditors, has been represented by his own counsel, who have appeared in resistance to appellant's petition of intervention."

With this rather novel theory we are not able to agree. We are not disposed to hold that the legislature went through the idle ceremony of designating the attorney general of this state as only an agency to set in motion the machinery of the law looking to the dissolution and winding up of the affairs of insolvent insurance companies; neither do we believe that it was the purpose of the legislature that, once having set the machinery in motion, the attorney general might wash his hands of the whole affair and retire from the field of operations, leaving the further control and disposition of the affairs of the corporation to an officer of the court (the receiver); or to the attention of interested creditors, allowing each to take from the corpus of the estate so much thereof as skill, ingenuity, or opportunity afforded. The attorney general is the plaintiff in this action and officially charged with the duties of winding up the affairs of this surety company, and we may not consider an appeal of which he has had no notice, and compel him and those whom he represents in his official capacity to be content with such conclusions as may be reached upon the contentions of other parties adversely interested.

It follows that we must and do hold that because of the failure of the appellant to serve notice of appeal on necessary

parties we are without jurisdiction, and the motion to dismiss is sustained.—Appeal dismissed.

RICHARDS, C. J., and MITCHELL, PARSONS, DONEGAN, ANDERSON, KINTZINGER, and STIGER, JJ., concur.