SHELBY GARNER, SR., as Guardian, v. J. G. HENDRY, Appellant.

**Guardian and Ward:** UNAUTHORIZED INVESTMENT. The guardian of an imbecile invested the funds of his ward in a bank in a manner not authorized by the court. Upon the appointment of his successor he 1 surrendered the certificate of deposit to him, and the latter made no report to the court of the condition of the ward's estate, obtained no direction as to how investments should be made, and allowed the money to remain where it was for fifteen months, when the bank failed. *Held*, that the second guardian must account for the loss.

**SAME:** PRACTICE. In such a case it is not necessary to ascertain what 2 amount of money may be realized from the assets of the insolvent bank before bringing an action against the guardian.

**Practice on Appeal.** A denial made at the end of an argument, but 3 separate from it, will be treated as though formally made, in the absence of objection.

*Appeal from Adair District Court.*—HON. A. W. WILKINSON, Judge.

FRIDAY, MAY 24, 1895.

Action at law to recover of the defendant money which he received as guardian of Lewis B. Cox, imbecile, and for which it is alleged he has failed to account.

*Storey & Gaines* for appellant.

*Seever & Neal* for appellee.

Robinson, J.—Lewis B. Cox is, and has been for more than twenty years, a person of unsound mind, incapable of transacting his own business. He received from the estate of his father about two hundred and fifty dollars, and as a contribution from three uncles enough more to make the total amount one thousand dollars. It was agreed by the uncles that this should be loaned at the rate of ten per cent. per annum, and that the interest should be used for the benefit of Cox. It is said that the principal was to become the property of the uncles at the death of Cox. In 1873, Samuel Thompson, one of the uncles, was appointed guardian of the estate of Cox, and performed the duties of that office until August, 1889, when he was discharged, and the defendant succeeded him. At that time Thompson had in the Farmers' Bank of Fontanelle, as property of his ward, two hundred and fifty dollars bearing eight per cent. interest; three hundred and fifty dollars bearing six per cent. interest; and, in addition, twenty-one dollars and thirty-six cents of accrued interest. The defendant gave to Thompson a receipt for one thousand dollars as principal and twenty-one dollars and thirty-six cents interest, and received from him three certificates of deposit for the principal and a check for the interest. Two of the certificates provided for the payment of interest and one did not, but the defendant was told by Thompson that the bank was paying seven per cent. interest on the entire amount, and the president of the bank told him that the bank would allow him interest at that rate while the money remained on deposit. The defendant did not withdraw the money, but on the first day of September, 1889, surrendered the certificates he had received from Thompson, and was given a new one for one thousand dollars, which provided for the payment of interest at the rate of seven per cent. per

annum.    No change had been made in the deposit,
when, on the twelfth day of December, 1890, the bank,
then being insolvent, made an assignment for the ben-
·efit of creditors.    In January, 1891, the defendant
resigned as guardian, and his partner in business, G.
·G. Rechtenbach, became his successor.    Rechtenbach,
with the knowledge and evident approval of the
·defendant, filed a claim for the amount of the deposit,
and asked that it be adjudged to be a trust fund, and
·allowed as a preferred claim; and that was done.  Rech-
tenbach having died, the plaintiff was appointed to
·succeed him, and brought this action to recover the
·amount of money the defendant received from Thomp-
son, with interest.    The cause was tried without a
.jury, and judgment was rendered in favor of the plaint-
iff for one thousand dollars, with interest thereon at
.six per cent. per annum from the first day of January,
1891, and costs.

I.    In February, 1882, Thompson, as guardian of
·Cox, reported to the proper court that he was unable
to loan the money of his ward at a greater rate of inter-
est than eight per cent. per annum, and was
authorized to make loans at that rate.    No
authority to accept a lower rate is shown.    Not-
withstanding that fact, during the fifteen months or
more which intervened between the time of his appoint-
ment and the failure of the bank, the defendant made
no real effort to loan the money at eight per cent., made
no report to the court of the condition of the estate
·of his ward, obtained no direction as to the investments
which should be made, and secured no approval of
what he had done.    He contends that the money was
really invested by his predecessor, and relies somewhat
upon an alleged request or suggestion of Thompson
and other relatives of Cox that the money should be
permitted to remain in the Farmers' Bank, unless a
.higher rate of interest could be obtained elsewhere.

Some immunity is also claimed from the alleged fact that upon the death of the ward the principal of the fund in question was to revert to the uncles who contributed it. But we are of the opinion that none of these matters constitute any defense to this action. During the lifetime of the ward the title to the entire fund was vested in him, and the defendant was responsible, not to those who had contributed to it, but to his ward, and could properly manage the fund only under and according to the direction of the court. The law of this state inhibits the investment of money and the doing of other acts by the guardian in behalf of the ward without the direction of the court, and that direction must be given before the act. *Bates v. Dunham,* 58 Iowa, 308, 12 N. W. Rep. 309; *Slusher v. Hammond,* 94 Iowa, 512, 63 N.W. Rep. 185. Thompson had no authority to make the loan in question to the bank, and he could confer none upon the defendant. The latter must be charged with knowing the order of the court; and, as it did not authorize the investment made, it was his duty to withdraw the money within a reasonable time, or obtain authority to permit it to remain. But, according to his own theory of the matter, he did neither. It is certain he surrendered the certificates received by Thompson and received another. In the proceeding to have the claim established as against the funds in the hands of the assignee of the bank it was found and adjudged that the transactions between the defendant and the bank were of such a nature that the subject of the transaction retained its trust character. That could not have been the case had the money in question been loaned to the bank by authority of the court. We conclude that the evidence was sufficient to justify the court in finding that the money was invested in a manner not authorized by it, that the defendant should be held responsible for the investment, and that he is liable in this action for its full

amount. It appears that a considerable part of it may be realized from the assignee of the bank. The assignee now has in his possession nearly eight thousand dollars for the payment of claims, and expects to realize from uncollected notes and accounts about two thousand dollars more. The preferred claims amount to nearly fourteen thousand dollars, of which about one-half in amount are in litigation. One-half of the amount in controversy, and perhaps more, will probably be realized from the property of the bank, and it is said the plaintiff should not be permitted to recover until the amount is ascertained. But the defendant permitted or made an unauthorized use of the funds of his ward. He should have accounted for all of them when he resigned the guardianship. To allow him to defer final settlement until the affairs of the bank are closed would be to permit him to take advantage of his own wrong. That the law will not permit. If he pays the full amount for which he was held liable by the district court, he will be entitled to whatever is realized from the property of the bank on the claims filed by his successor; but he cannot be given relief on account of it in this action.

II. An additional abstract was filed by the appellee, which contains the statement that the two abstracts together do not show all the evidence and entries in the case. This is, in effect, denied by the appellant, who insists that the two abstracts together set out the entire record, and asks that the costs of the transcript be taxed to the appellee. The denial is made at the close of the argument, but is separate from it, and, in the absence of objections, may be given the effect of a denial under the rules. We are of the opinion that the transcript should not have been required, and costs for it will be taxed to the appellee. The judgment of the district court is *affirmed.*