L. A. ANDREW, State Superintendent of Banking, Appellant, v. SAC COUNTY STATE BANK et al., Appellees.

FEBRUARY 14, 1928.

REHEARING DENIED MAY 11, 1928.

*John Fletcher*, Attorney-general, *Earl F. Wisdom*, Assistant Attorney-general, and *Robert Elmer Long*, for appellant.

*W. H. Hart*, for intervener, R. L. McCord, appellee.

KINDIG, J.—This proceeding was determined entirely upon a stipulation of facts filed by the parties May 24, 1926, as follows:

"Come now the above-named intervener and the above-named plaintiff as receiver of the defendant bank and stipulate that the following facts are and shall be considered as evidence and proven facts in the trial of this cause.

"1. Petition in the above-entitled cause was filed by the above-named plaintiff on or about November 25, 1925, asking for the appointment of a receiver for the defendant bank for the purpose of liquidating said bank, and upon said date the said L. A. Andrew, who was and is the superintendent of banking of the state of Iowa, was appointed as such receiver, and that he duly qualified and is still acting as such.

"2. That the intervener is the duly appointed and qualified guardian of Bernice Brown; that said Bernice Brown is a minor; that the intervener was such guardian at all the times herein referred to; and that during said times and until on or about November 19, 1925, he was also guardian of Bethel Brown, an older sister of said Bernice Brown; that he was discharged as guardian of Bethel Brown, who had attained majority, on or about November 19, 1925.

"3. That on or about November 7, 1925, there came into the hands of the intervener as guardian of said Bernice Brown and Bethel Brown, in payment of a loan of guardianship funds theretofore made, the sum of $3,069.89, said payment being

made in the form of two checks drawn upon the defendant bank.

"4. That the intervener had not theretofore, either as guardian, or individually, kept an account with or been a customer of the defendant bank.

"5. That the intervener, on November 7, 1925, took said checks, amounting to $3,069.89, to the defendant bank, and said to the officer of said bank who attended upon him that he had said checks; that they represented money belonging to his wards, Bernice Brown and Bethel Brown; that he was about to make settlement with Bethel Brown, who had attained majority; that he had resigned as guardian of Bernice Brown and that as soon as his resignation was accepted and his successor appointed he would make settlement with such successor; that he desired to deposit said funds for the purpose of effecting such settlements, and that as they were effected the money would be withdrawn for the purpose of paying the same over to the said Bethel Brown, and to his successor as guardian of Bernice Brown, respectively; and that this would be done within a few days; and at said time the bank accepted and received said checks so drawn upon it, in the aggregate sum of $3,069.89, and issued a deposit slip for such amount to the intervener as guardian as aforesaid.

"6. That said deposit was so made without the guardian having made application to the court for authority to so deposit the same, and without any order of court authorizing the guardian to deposit said funds, or any other funds, in said bank.

"7. That said funds so deposited comprised the entire estate of his wards in the guardian's hands; and they owned no other property except a small amount of personal effects and stocks of defunct companies, of no value.

"8. That thereafter the intervener withdrew from said bank for the purpose of effecting settlement with Bethel Brown the sum of $1,314.33, of which amount $1,308.33 was paid to Bethel Brown and $6.00 was paid to the clerk of the court for his costs. Said withdrawals were made by check on said deposit.

"9. Meanwhile, and on November 7, 1925, the intervener, as guardian as aforesaid, had filed his final report, resignation and application for discharge, and, after hearing thereon the court entered an order, which was filed on November 19, 1925, discharging the guardian as to Bethel Brown, and further ordering as follows:

" ' * * * as to Bernice Brown, minor, his report is approved and all his accounting found to be correct and all payments made for said minor out of her estate and money in his hands are hereby approved; and it is further ordered that upon the appointing of a new guardian for the said Bernice Brown and his qualifying as required by law, and the said R. L. McCord settling with the said new guardian for the funds and estate of the said minor Bernice Brown he shall be and is discharged as such guardian and released from any and all further duties and obligations in the said guardianship and his bonds released and his bondsmen released from all further duties and liabilities herein.'

"10. That at the time said order was filed and until the evening of the 20th day of November the intervener was out of the city attending to his duties; and on the 21st day of November, 1925, the defendant bank failed to open; that no successor as guardian of Bernice Brown has yet been appointed.

"11. That of the moneys remaining in said defendant bank after the withdrawal of said sum of $1,314.33 as above stated, $25.00 was allowed the guardian for his compensation, and the balance, $1,730.56, belonged to his said ward, Bernice Brown, and was the amount required by the final report and the aforesaid order to be paid over by the intervener to his successor as guardian of the said Bernice Brown before his discharge should become effective.

"12. That at all times on and after the making of the deposit aforesaid, and up to and including the date of the suspension of the bank and the appointment of the receiver, the bank had not less than $3,500 of cash in vault, and that not less than $3,500 thereof passed into the actual possession of the receiver.

"13. That the intervener, within the time fixed for the filing of claims, duly filed his proof of claim and petition of intervention in said cause; that thereafter, and on or about the 22d day of March, 1926, the receiver filed his report and therein rejected the intervener's claim to a preference, but allowed the same as a depositor's claim; and that within the time fixed for filing objections to said report the intervener duly filed objections thereto upon the grounds and by reason of the facts al-

leged in his said proof of claim and petition of intervention. * * *

"15. The only question for determination is whether, upon the facts herein stipulated (and upon any other facts which may be offered in evidence upon the trial), the intervener is entitled to have his claim allowed as a preference in the amount of $1,730.56, the sum so belonging to his said ward, Bernice Brown. As to the balance, $25.00, allowed the guardian for his compensation, no claim to preference over depositors is asked. And if the intervener is so entitled to preference as to said sum of $1,730.56, his claim therefor shall be established accordingly. If he is not so entitled to preference the intervener's claim shall be established as a depositor's claim in the sum of $1,755.56."

I. A motion to dismiss the appeal was filed, based upon the lack of authority of the receiver in the premises to bring the controversy to this court.

Primarily, such objection is founded upon the theory that a "receiver" is impartial in the performance of his duties, and therefore it is no concern of his whether or not one creditor ob-

 tains a preference or the right to a prior payment over another. Upon this general proposition the following authorities may be considered: *Bank of Montreal v. C., C. & W. R. Co.*, 48 Iowa 518; *State Cent. Sav. Bank v. Ball-Bearing Chain Co.*, 118 Iowa 698; *State ex rel. Havner v. Des Moines Union Stock Yards Co.*, 197 Iowa 987; *First Nat. Bank v. White Ash Coal Co.*, 188 Iowa 1227; *Hirning v. Hamlin*, 200 Iowa 1322; 1 Clark on The Law of Receivers, Section 676; 2 Tardy's Smith on Receivers 2134, Chapter 29; High on Receivers (4th Ed.), Section 264a; 34 Cyc. 447, Paragraph 3; 3 Corpus Juris 653, Section 522; *Cobbs v. Vizard Inv. Co.*, 182 Ala. 372; *Bosworth v. Terminal R. Assn.*, 80 Fed. 969; *Sutton v. Weber*, 100 Ill. App. 360; *Frey v. Shrewsbury Sav. Inst.*, 58 Md. 151; *Foreman v. Defrees, Brace & Ritter*, 120 Ill. App. 486; *Chicago Title & Tr. Co. v. Caldwell*, 58 Ill. App. 219; *Edwards v. Western Land & Power Co.*, 27 Cal. App. 724 (151 Pac. 16); *Dorsey v. Sibert*, 93 Ala. 312 (9 So. 288); *First Nat. Bank v. Bunting & Co.*, 7 Idaho 27 (59 Pac. 929); *Account of Correll*, 283 Pa. St. 277 (129 Atl. 104); *Knabe v. Johnson*, 107 Md. 616 (69 Atl. 420); *State ex rel. Sparks v. State Bank & Tr. Co.*, 36 Nev. 526 (137 Pac. 400); *McKinnon v. Wolfenden*,

78 Wis. 237 (47 N. W. 436); *Battery Park Bank v. Western Carolina Bank,* 127 N. C. 432 (37 S. E. 461); *State ex rel. Miller v. People's State Bank,* 22 N. D. 583 (135 N. W. 196); *Cameron v. City Bank of York,* 284 Pa. St. 187 (130 Atl. 407); *How & Co. v. Jones,* 60 Iowa 70; *First State Bank v. Oelke,* 149 Iowa 662. *Bank of Montreal v. C., C. & W. R. Co.,* supra, contains this language:

" * * * he [the receiver] is uniformly regarded as an officer of the court, and, being such, the fund or property intrusted to his care is regarded as in the custody of the law, the 'court itself having the care of the property by its receiver, who is merely its creature or officer, having no powers other than those conferred by the order of his appointment, or such as are derived from the established practice of courts of equity.' High on Receivers, Section 1."

*Bosworth v. Terminal R. Assn.,* supra, on the general subject declares:

"The true line of demarcation we think to be this: He [receiver] has the right of appeal with respect to any claim asserted by or against the estate, for therein he is the representative of the entire estate. He has the right of appeal from any decree which affects his personal right, for therein he has an interest. But he has not the right of appeal from a decree declaring the respective equities of parties to the suit. He should therein be indifferent, and not a partisan. His duty is to all parties in common. He should not become the advocate of one against another."

"Receivership" is a term applied to various and different officers of the general kind, including mere custodians, as well as those engaged in executing and managing active trusts. However, under all the authorities above cited, there does not seem to be a discordant note with reference to the declaration that a "receiver" may "appeal" from a judgment or decree against the entire trust estate as such; for that is his duty, and one of the reasons for his appointment.

Under this jurisdiction, "preferences" of the nature here involved are against the entire "estate;" for they are applications for the return of property, rather than claims for debts. *Andrew v. State Bank of New Hampton,* 205 Iowa 1064. In the *New Hampton* case we said:

"Fundamentally, the remedy in actions of this kind is based upon an interest in or ownership of the particular property or fund claimed, rather than the relationship of debtor and creditor. * * * Primarily, such equity in or title to 'property' exists through or because of a trust, or relationship in the nature of a 'trust.' "

See, also, *Leach v. Iowa State Sav. Bank,* 204 Iowa 497.

So then, in fact, the appellee here is demanding that there be delivered to him his own, which is now held by the "receiver" as part of the estate of the defunct bank, for the benefit of all creditors. To that extent attempt is made to dispossess and take away from the "receiver" that particular "property." Consequently, that officer of the court, in defending against this effort in the district court, and when there defeated, appealing to this court, is doing no more than protecting his title to the "property" of the "estate" against one who disputes it. Necessarily, then, the "receiver" is not showing mere favoritism between creditors, and intermeddling in that with which he has no concern; but rather, this arm of the court, so-called, is functioning according to the explicit purposes of his creation, for the good of the whole estate. Failing in this, he would neglect his obligation, and, without resistance, permit others, having no right, to take from him the very possessions he was appointed to preserve.

Moreover, there has been an avalanche of similar litigation in recent years, and in many of these cases, "receivers" have "appealed." These have been allowed without hindrance, and final judgments rendered thereon. Thus, tacitly, if not with express avowal, we have sanctioned this procedure. Accordingly, the motion to dismiss is overruled.

II. Returning now to the merits of the controversy, it is found that the cause of action is based upon a claim for $1,755.56, which was the balance permitted by the guardian to remain in the bank before it closed its doors. "Preference" is predicated upon two grounds: First, wrongful deposit; and second, special or specific deposit for a particular intention.

Consideration will be given to those points in the order made.

III. On November 7, 1925, the transaction between the guardian and the bank was consummated when $3,069.89 was

 left with the institution, as shown by the agreed statement of facts. Afterwards, $1,314.33 thereof was withdrawn by check, to settle with the ward Bethel Brown. The remaining sum, which is the subject of this suit, belonged to the ward Bernice Brown.

At the outset, it is claimed that a "trust" arises because the "deposit" was wrongful, due to the fact that there was no permissive authority from the court for the relationship between the "guardian" and the bank. That will depend upon the character of the "deposit" contract.

Reference must now be made to the "stipulation." There it is found that, before this time, the "guardian" received the money under consideration as the proceeds of a maturing loan formerly made for these wards. Further management thereof was not contemplated; but rather, pending the filing of a final report and the time required for approval thereof, it was the guardian's aim to find a safe place for keeping the funds. Substantiation of the illegality of the "deposit" is based upon Sections 12581 and 9285 of the 1924 Code. Section 12581 provides:

"Guardians of the property of minors must prosecute and defend for their wards, may employ counsel therefor, lease lands, loan money, and in all other respects manage their affairs, under proper orders of the court or a judge thereof."

By this paragraph, appellee persists, a preliminary court order is mandatory. For sustaining authority the following cases are cited: *Slusher v. Hammond,* 94 Iowa 512; *Bates v. Dunham,* 58 Iowa 308; *McCutchen v. Roush,* 139 Iowa 351; *McIntire v. Bailey,* 133 Iowa 418; *Easton v. Somerville,* 111 Iowa 164; *McReynolds v. Anderson,* 69 Iowa 208; *Garner v. Hendry,* 95 Iowa 44. Those precedents involve situations where there have been investments or other obvious transactions through "management" clearly within the purview of the quoted enactment.

Before us, however, is another state of facts. Temporary "deposit" of these trust funds for short custody, to accomplish safe-keeping, does not involve "the loan of money" or the "management of the ward's affairs." Webster's New International Dictionary contains this definition of "manage:"

"To direct affairs; to carry on business or affairs; to administer; also, to admit of being carried on."

38 Corpus Juris 523 suggests:

"To manage money is to employ or invest it."

Quite different are the circumstances relating to the case at bar. Rather than "managing, employing, or investing," the items were placed "for safe-keeping" for the time being, in order that they might be retaken by the guardian and delivered to the ward. Therefore, this legislation does not control here.

Administrators and trustees are permitted, without court authority, to "deposit" in banks for "safe-keeping," and are not personally liable for losses arising therefrom unless there was negligence or fraud in selecting the institution. *Officer v. Officer*, 120 Iowa 389; *In re Estate of Workman*, 196 Iowa 1108; *Leach v. Beazley*, 201 Iowa 337. *Officer v. Officer*, supra, contains this apt expression:

"The first question of law to be determined on this state of facts is, Was the deposit wrongful? If so, and the bank had notice of the character of the funds, there is no doubt that the claim should be given a preference. * * * An executor must exercise that degree of care and prudence with reference to funds coming into his hands that ordinarily prudent men exercise in regard to their own affairs, and, in the absence of statute preventing, they may deposit the same in banks of good standing and reputed solvency. * * * Indeed, it seems to be generally held that a trustee who has deposited funds to a trust account in a reputable bank or banking house is not liable for any loss which may occur through failure of the bank. * * * "

28 Corpus Juris 1145, Section 244, supplies the following text:

"A guardian who has on hand funds of his ward, awaiting investment, may deposit the same temporarily in a bank of good reputation; and if, in so doing, he acted in good faith and with ordinary prudence and diligence, he is not responsible for loss resulting from subsequent insolvency of the bank."

When the "deposit" does not amount to management or loaning, as contemplated by said Section 12581, then there does not seem to be any good reason or logic why the general law relating to executors and trustees should not apply to "guardianships." No intimation is made that there was any bad faith

or negligence on the guardian's part in the instant case, and fraud is not alleged or proven against the bank.

IV. Additional foundation for the creation of a trust is sought through Code Section 9285, supra, which is:

"Any court having appointed, and having jurisdiction of any receiver, executor, administrator, guardian, assignee, or other trustee, upon the application of such officer or trustee, after such notice to the other parties in interest as the court may direct, and after a hearing upon such application, may order such officer or trustee to deposit any moneys then in his hands, or which may come into his hands thereafter, and until the further order of said court, with any such trust company, state or savings bank [institutions in Chapter 416, 1924 Code], and upon deposit of such money, and its receipt and acceptance by such corporation, the said officer or trustee shall be discharged from further care or responsibility therefor. Such deposit shall be paid out only upon the orders of said court."

Manifestly, that act of the lawmakers' has to do with a very different transaction. Within the scope of the quotation is the instance where the guardian or the trustee desires to free himself from further responsibility by making a "deposit" in the bank, and, through the machinery furnished therefor, transfer such liability onto that institution. Due to that legislative contemplation alone, the "guardian" is not limited to the particular course, but may proceed otherwise. *Robinson v. Irwin*, 204 Iowa 98.

Inclination of this court was expressed in the *Robinson* case in favor of the idea that Section 9285 is limited in its application to the trust companies and banks named in the chapter wherein it is found. Under either event, however, the "guardian" here was at liberty to make the "deposit," so long as he acted without fraud or negligence.

V. Ultimately it is argued that, even though a trust was not established by the methods previously discussed, yet such relationship did arise because the particular "deposit" was offered and accepted as special, specific, or extraordinary.

Careful review of the "stipulation" causes us to disagree with this claim. Information was furnished the bank about the "guardian's" plans to make final account and obtain his re-

lease, but that depository had no part in carrying out these fiduciary and court arrangements. It did not undertake to transfer the money to the ward or the court, nor was there consent on the part of the financial institutions to return the identical property. But one undertaking arose therefrom, which was to honor checks upon the general account. Mere information concerning the "guardian's" proposed course of action was not enough to change this. Forsooth, in the inception of the "guardian's" duties, this trust officer might have explained to the bank his general scheme and method of procedure in administering the estate; yet that would not have brought about a trust relationship between the appellee and the bank; and in the present event, no more was done than to relate to the bank the "guardian's" general mode of conduct and the time of his expected compliance therewith.

Returning again to the discussion in *Officer v. Officer*, supra, we find:

"He [the executor] alleges that he notified the bank that this was a special trust fund, which should at all times be kept on hand, and subject to the order of court, and that said Officer & Pusey [the banking institution] had notice of the character of the funds. * * * The facts are not in dispute. * * * The deposit made in this case was not a special [or specific] one. The bank did not receive it upon a promise to keep the identical money and to return it to the executor. It was not specific; for the bank had the right to mix the funds with other money received by it, and obligated itself simply to honor and pay the executor's checks. It did not agree to hold the same for the parties entitled thereto, but it was at all times authorized to pay out the same on checks signed by the executor, and was not bound to see that the money received thereon went to those who were entitled to receive it."

*Smith v. Sanborn State Bank*, 147 Iowa 640, does not apply here; for in that case the money was received under the express agreement by the bank that it should be held for the payment of certain debts and the expenses of the depositor's wife at the hospital. Similarly, discrimination can be made in *Dolph v. Cross*, 153 Iowa 289, wherein it is said:

"The facts pleaded show that the execution defendant made the deposit for the specific purpose of meeting the checks

which he had just issued * * * . The bank officials understood that they received this money for the express purpose of paying checks already issued for that exact amount.''

Also, in *Hudspeth v. Union Tr. & Sav. Bank,* 196 Iowa 706, an escrow was involved, and the trust there was based upon this thought:

"Although the identical funds were not kept separate, the transaction itself was considered as an escrow transaction, and so shown on the escrow register of the Bennett concern which passed to its successors.''

Readily it can be seen that the "deposit" made in the case at bar was not special or specific, nor was it anything except general. Liability on the part of the bank was to honor the guardian's order in withdrawals, and this it did whenever called upon before its doors were closed. Duty was to repay to him who had placed the money in the banking establishment. This was within the purview of said conversation set forth in the "stipulation," rather than the contended conception that the financial concern became a trustee, obligated to make accounting to the ward or the court.

Proof of an existing trust has failed, and the claim must be allowed as a general "deposit" only.

We do not here determine the liability of the guardian, nor do we intimate what the same is, or ought to be.

Therefore, the judgment and decree of the district court should be, and hereby is, reversed.—*Reversed.*

STEVENS, C. J., and EVANS, MORLING, and WAGNER, JJ., concur.

FAVILLE, DE GRAFF, and ALBERT, JJ., dissent.