ROBERT L. LEACH et al., Appellees, v. STOCKPORT SAVINGS BANK, Appellee; NEW INDEPENDENT SCHOOL DISTRICT OF STOCKPORT, Intervener, Appellant.

JANUARY 23, 1929.

*Hollingsworth & Hollingsworth,* for appellant.

*John Fletcher,* Attorney-general, and *H. B. Sloan,* for appellees.

KINDIG, J.—The Stockport Savings Bank, defendant, was, during the time here involved, a corporation duly organized and existing under and by virtue of the banking laws of this state.  On October 14, 1924, the state superintendent of banking, Robert L. Leach, was appointed receiver of that financial institution. Then afterwards, as his successor in office, L. A. Andrew, appellee, continued the execution of the trust. While the banking concern was operating, the appellant, New Independent School District, became a depositor, and continued such until the former ceased doing business. So, when the doors closed, appellant had on deposit $7,678.36.

In the course of the receivership administration, appellant, in due time, filed its claim for a preference, asserting that there was created a trust in its favor because the alleged "deposits" were in fact illegally received by the bank, in that no depository bond was furnished, according to the requirements of Section 4319 of the 1924 Code. That legislative enactment reads as follows:

"It is hereby made the duty of the treasurer of each school corporation to deposit all funds in his hands as such treasurer in some bank or banks in the state at interest at the rate of at least two per cent per annum on ninety per cent of the daily

480

balances payable at the end of each month, all of which shall accrue to the benefit of the general fund of such school corporation; *but before such deposit is made, such bank shall file a bond with sureties to be approved by the treasurer and the board of directors of such corporation* [the italics are ours] in double the amount deposited, conditioned to hold the school corporation harmless from all loss by reason of such deposit or deposits; * * * Said bond shall be filed with the president of the school board and action may be brought thereon either by the treasurer or the school corporation as the board may elect."

Only one question is presented at this juncture for our determination, and that is whether or not, within the purview of the foregoing statute, the deposits made by the school district in the Stockport Savings Bank were unauthorized and illegal. Sometime after the bank failed, a depository bond, dated August 3, 1921, purporting to be for the benefit of the school district, was found among papers of the school president. Said instrument, however, was never expressly approved by the school corporation's treasurer or its board of directors, as contemplated by the lawmakers in the preceding quoted paragraph. Nevertheless, the appellee argues that, even though such be true, yet there was an inferential or implied approval which meets the occasion. A review of the testimony, as given by the witnesses, will lend aid and assistance at this place. C. L. Beswick declared:

"The funds of the school district I remember being deposited with the Stockport Savings Bank prior to 1921. During the year 1921, the matter of requiring the bank to give a bond was brought up in the meeting. The book I have here is entitled, 'Proceedings of the Board of Education.' It is the secretary's minute book * * *. Turning to page 145, I recollect the passage of a motion which is as follows: 'Moved by Bunker and seconded by Workman that the treasurer be authorized to deposit school funds in the Stockport Savings Bank, and requiring bank to give bonds to the amount of $10,000 with approved personal security. Motion carried.' Up to that date, July 21, 1921, no bond had ever been given by this bank to the treasurer of the school district or the school district. After that time, no bond was ever presented to the board for their approval. I do not

think that the matter of approval of the bond was ever discussed by the board. No action was ever taken on the approval of any bond for the Stockport Savings Bank. * * * I did not know, as a matter of fact, that it [bond] was in my possession. [It was there found after the bank failed.] The envelope that it was in was a 'frank' envelope, addressed to Mr. A. M. Davis. It was one of these agricultural envelopes, and had the address on the outside. Up to the time I found it, I did not know it was in my possession.''

A. M. Davis stated:

''I was secretary of the school district. I don't recollect of that bond, being returned to me, and me handing it to the president. I couldn't recollect the circumstances at all. * * * There had never been one [bond] presented to the board at any meeting, and I didn't know that there was ever one filled out, or had been given. * * * No such bond was ever presented to the board or approved by the board. * * * I remember that the bank gave a bond; that I insisted that they give one, because the board required the treasurer and myself to give a bond, and I thought the bank should give one, too. * * * I have no recollection as to the bond found in the possession of the president of the board in an envelope with my name on it. I couldn't say that I ever had the bond in my possession after the bank gave it. I have no recollection of turning it over to the treasurer.''

C. E. Bunker swore:

''I have occupied the position of member of the school board. * * * On July 21, 1921, I remember the passage of a motion directing the bank to give a $10,000 bond. No such bond was ever presented to the board or approved by the board. I have continuously been a member of the board, and attend the board meetings and hear the minutes read there at each meeting; hear the minutes of the previous meeting. I did not know the fact that a form of bond had been made out by the bank. I did not know anything about any bond until after the bank had failed. No bond was ever presented to me for approval, or presented to the board for approval.''

Delbert Morris continued, as follows, to the same effect:

"While I was treasurer, there was not any bond of the Stockport Savings Bank as depository put up to me for my approval, to my knowledge. I never saw that paper marked 'Exhibit 1' [the alleged bond] before. I never at any time approved any bond of the Stockport Savings Bank. * * * When I was depositing school funds in the Stockport Savings Bank, I don't know as I understood that they had been created depository by the district,—rather from custom. * * * I didn't know they had to give a bond. I called their attention to the fact at one time, and it is probably true I asked them to give a bond, but I didn't know whether they had or not. I never understood from anybody that the bond had been given. I didn't know a bond had to be given,—wasn't given to me prior to my treasurership. * * * I knew nothing about any resolution, being passed by the board, appointing the Stockport Savings Bank as depository. * * * I didn't attend any board meetings. * * * As I was going along, I thought the bank had authority to receive funds, and I would deposit them, * * *. I am not satisfied in my own mind that there was a bond. * * * *I don't know whether, at the time that bond was given, in 1921, J. M. Johnston and E. E. Keck* [the private sureties] *were good for the bond.* [The italics are ours]."

Can we say, upon this record, that the statutory requirement was met? We think not.

I. Authorities are cited by the appellee to the effect that an irregular bond or an unapproved instrument of that nature, under certain circumstances, may be valid against the sureties thereon. Among such references are 4 Ruling Case Law 48, Section 5; *Garretson v. Reeder,* 23 Iowa 21; *Sheppard & Morgan v. Collins,* 12 Iowa 570; *Boone County v. Jones,* 54 Iowa 699; *Moore v. McKinley,* 60 Iowa 367; *State v. Fredericks,* 8 Iowa (Clarke) 553; *Board of County Com. v. American L. & Tr. Co.,* 75 Minn. 489 (78 N. W. 113).

Manifestly, those pronouncements are not controlling here. Actions of that nature embrace different principles from those decisive of the present litigation. Frequently, in certain contests, the important point is one of acceptance or delivery, which is distinguishable from the question relating to the meeting of and compliance with statutory conditions precedent to the creation of the legal relationship of depositor and deposi-

tory. "Approval" here is for the benefit of the public. "Acceptance" and "delivery" are insufficient to permit the placing of the school district's funds in the bank unless a bond with sufficient sureties is first approved. This is essential to prevent the "delivery and acceptance" of an inadequate and sometimes worthless security.

A line marking the boundary between what is or is not a legal deposit must be drawn somewhere. Consequently, the statute provides that, unless the bond has been furnished, as a necessary safeguard against public loss, a deposit cannot be made; and the statutory approval provided is the only method of determining the sufficiency or insufficiency of the "security." Power to accept for the public must exist, before the status of debtor and creditor between the bank and the school district can arise. Private persons and institutions have a right to make waiver in that regard, while the public corporation does not. No authority to make the deposit is present in the municipality until the necessary conditions precedent thereto are complied with.

II. Another mark of distinction between the cases cited by appellee and the present dispute is the effect of the presumption that there was an "approval." Many cases can be found in the books, holding that "approval" may be inferred, under proper circumstances and conditions. Such result, however, is always subject to rebuttal by competent evidence. Without, therefore, cataloging all the instances where that rule of evidence may apply, it is enough to say here that the testimony, as disclosed by this record, is overwhelming to the effect that there was no "approval" of the particular bond under consideration.

The presumption, then, if any there was, is no longer sufficient to support the judgment and decree rendered in the trial court for appellee; for the particular instrument in litigation, so far as it appears from the testimony, was never presented to the board or the treasurer, whose duty demanded that they, under the statute, make the approval for the district. These officers, and no one else, could do this.

III. Inferred, implied, or presumed approval may arise sometimes when a bond is found in the possession of an officer whose duty it is to approve the sureties thereon before filing or acting upon the same. Most of the adjudicated cases deal with

situations of this kind. Where but a single official is confronted with such statutory duty, and the bond is filed in his office, the. inference sometimes is that he did thus approve. It is assumed, under those circumstances, that he would not violate the statute, disregard his duty, or commit a wrong, even though no formal record was made of the approval in such instance. The very fact of the filing, or other conduct on the official's part, is evidence in itself that there must have been an acceptance of the instrument and the necessary consideration of the sureties, and a favorable conclusion reached in reference to their sufficiency. In that case, the duty to approve and possession are in one and the same person.

But here the facts are different. This bond was found with the president. He had no duty to approve. That obligation was upon the board of directors and the treasurer. Said bond was not filed with, or in the possession of, either. Necessity demanded that the board approve, as well as the treasurer. Action in this respect by one alone was not enough, under the statute. A specific requirement by the legislature was that the approval be by both. As a matter of fact, it was made by neither the board nor the treasurer. Moreover, it is not certain that the treasurer ever would have given his approval, because he testified as follows:

"I don't know whether, at the time that bond was given, in 1921, J. M. Johnston and E. E. Keck [the private sureties on the bond] were good for the bond."

Hence, there being no approval, the statute was not complied with, and the deposit was unauthorized and illegal. Those deposits were made for the purpose of obtaining interest, under the statutory provision before mentioned, and we do not pass upon the question as to what the situation would be in this case, had the money been put in the bank for the purpose of safe-keeping.

IV. Because of this failure, and the lack of authority on the part of the district in the premises, the bank wrongfully received the funds over which the contest is being waged. As a  result, there was brought into existence a trust item held by the bank in the capacity of trustee for the benefit of the school district. *City of New Hampton v. Leach,* 201 Iowa 316; *Leach v.*

*Farmers Sav. Bank of Hamburg,* 204 Iowa 1083. See, also, *Leach v. Citizens State Bank,* 202 Iowa 879; *Page County v. Rose,* 130 Iowa 296; *Brown v. Sheldon State Bank,* 139 Iowa 83; *Andrew v. Iowa Sav. Bank of Estherville,* 203 Iowa 1089. Our discussion in *Leach v. Farmers Sav. Bank of Hamburg,* supra, is to this effect:

"It must follow, therefore, that the deposits made by the city treasurer were wrongful. We have so held as to failure to give bond in the case of *City of New Hampton v. Leach,* 201 Iowa 316. The deposits being thus wrongful in the first instance, title never passed to the bank, and it held said fund as a trust fund."

V. Resultantly, the remedy accruing to appellant in this case is based upon its ownership of the particular property or fund claimed, rather than the relationship of debtor and creditor. *Andrew v. State Bank of New Hampton,* 205 Iowa 1064; *Leach v. Iowa State Sav. Bank,* 204 Iowa 497, 505; *Leach v. Farmers Sav. Bank of Hamburg,* supra; *City of New Hampton v. Leach,* supra. Ownership arises, as before indicated, because the title never passed from the school district to the bank. It could not be transferred, for the fundamental reason that there was no authority to make the deposit, due to the fact that proper bond was not furnished and approved.

VI. Appellant's right to recover is not completed by the mere establishment of the "trust" alone. More than that is necessary, before this money can be obtained from the receiver  of the bank and returned to the political corporation. Reference is here made to the burden of tracing the "trust fund" into the custody of the receiver. *Andrew v. State Bank of New Hampton,* supra; *Leach v. Farmers Sav. Bank of Hamburg,* supra; *City of New Hampton v. Leach,* supra. See, also, *Andrew v. Eddyville Sav. Bank,* 204 Iowa 431.

VII. Available to appellant in this undertaking, however, is a presumption. In *Andrew v. State Bank of New Hampton,* supra, we said:

"When cash remains in the failing concern at the time it discontinued banking operations, and such money was afterwards delivered to the receiver, * * * the presumption is that

said commingled fund contains 'the trust proceeds,' and the latter can be removed from the whole without injury or injustice to the general creditors, because there was 'augmentation.' Charity assumes that the trustee did no wrong, but spent and disposed of his own property, and retained that which belonged to others. * *·*''

So, under the record in this controversy, it appears that, at the time of the bank failure, there was cash in the institution amounting to $5,699.76 which passed into the hands of the receiver. The inference is that it belonged to appellant. Rebuttal of the presumption was not made by the receiver. Therefore, we are constrained to hold that appellant has proven, through the inference, that said cash to the amount named belonged to and was its property. To that extent, then, the school district is entitled to the preference claimed. However, if there  are other preferred claims likewise established as a trust therein, then there must be prorating among such beneficiaries, including appellant, because the common fund is not sufficient to repay the latter, let alone those contemplated. *Leach v. Iowa State Sav. Bank,* 204 Iowa 497; *Andrew v. State Bank of New Hampton,* supra; *Leach v. Farmers Tr. & Sav. Bank of Dedham,* 204 Iowa 1343.

VIII. Furthermore, appellant insists that it is entitled to receive the return of the entire $7,678.36 advanced by it to the bank, notwithstanding the fact that the cash above named is not  sufficient to afford this. Its position in this respect is to the effect that, in addition to the money, the bank, when it closed, owned, and there was thereafter duly transferred to the receiver, commercial paper of the value of $92,895.45, which was not pledged in any way. One unsurmountable obstacle prevents appellant's receiving any benefit from those bills receivable. Sufficient identification and tracing are not proved. Putting the thought in another way, appellant has not sustained its allegation that any of the school corporation's property was transformed into the bills receivable. When the bank wrongfully received the deposits in the inception of the transaction, the relationship of debtor and creditor did not arise. Accordingly, the bank had no right to use or commingle the school

district's money with its own, for at all times the title thereto and property therein remained with the public institution. If, therefore, the bank exercised ownership over the district's money, treated it as its own, loaned it to or invested it with others, in return for the bills receivable, conversion would at once arise. The presumption is to the effect that the beneficiary's property will be retained intact. That is why there is an inference that it should be kept in the form received. Change of form is rebutted thereby, rather than established. *Leach v. Iowa State Sav. Bank,* 204 Iowa 497, 505; *Leach v. Farmers Tr. & Sav. Bank of Dedham,* supra. Language of *Leach v. Iowa State Sav. Bank,* supra, is as follows:

"It is not presumed that the money was converted by the bank into bills receivable, or into a deposit account with another bank, or into any other form of property."

Likewise, in *Leach v. Farmers Tr. & Sav. Bank of Dedham,* supra, the following appropriate words were employed:

"Under the record in this case, the three claims should be impressed as a trust, not upon the assets of the bank as a whole, but only upon the cash which the bank at the time of its closing had in its possession, and which came into the hands of the receiver * * *."

Parenthetically, it is noted that, were the trust express, authorizing the conversion of cash into bills receivable, or if the situation should arise where the cash came into the institution impressed with the trust in such a manner as to expressly or impliedly authorize its transformation into other forms of property, no doubt the presumption would be available. See *Andrew v. Security Sav. Bank,* 203 Iowa 546; *Murray v. North Liberty Sav. Bank,* 196 Iowa 729; *Andrew v. State Bank of New Hampton,* supra. Yet, under the record before us, appellant is not entitled to any part of the bills receivable, because it has not sufficiently followed and pointed out its trust funds therein.

Wherefore, appellant is entitled to, and should have, judgment for the amount of said cash remaining in the bank and coming into the hands of the receiver, subject to the duty of prorating, as before indicated.

The judgment and decree of the district court is reversed. —*Reversed.*

ALBERT, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.

EVANS, FAVILLE, and MORLING, JJ., dissent.

EVANS, J. (dissenting).—I am unable to concur in the majority opinion. The proceeding is one brought by intervention of the school district, to establish a preference in the receivership proceeding for the full amount of its deposit in the failed bank. The ground of recovery set forth in the petition of intervention was that the deposit of the funds of the district by its treasurer in the bank was unlawful, and known to be unlawful by the bank, in that no bond was given by said bank, "as required by law as a condition to the lawful deposit of said funds in the hands of such treasurers in any bank, but that, notwithstanding said failure to take such bond, the said treasurers unlawfully and wrongfully deposited said funds in Stockport Savings Bank; that the said Stockport Savings Bank, with full knowledge of the fact *that no such bonds* had been given by it, wrongfully, unlawfully, and knowingly received said trust funds from said treasurer, and with full knowledge that they constituted and were trust funds and public money, and impressed with a trust as such." These constitute the two elements of the intervener's case. The detailed facts upon which these allegations are predicated are comparatively simple. On July 24, 1921, the board of directors adopted a resolution authorizing deposits in this bank to the amount of $10,000, and requiring that a bond be given therefor by the bank. On August 3, 1921, the bank gave a good and sufficient bond, which is in no manner questioned in the evidence. The sequence of events from this point forward becomes involved in darkness, under the direct testimony of the officials of the school district. The president testified that he remembered nothing about receiving the bond; likewise the treasurer; likewise the secretary. And yet the president was compelled to admit that he found the bond in his own possession, in an envelope which had been addressed to the secretary. Though the secretary denied that he had any recollection of receiving the bond or delivering it to the president, yet he admitted that he knew a bond had been

given, and that he had previously insisted that one should be given, and that the bond found by the president in his own possession was written by the secretary. Though the treasurer testified that he had never approved the bond, and though one of the directors testified that the board had not approved the bond, yet all the moneys claimed in the intervention had been deposited by the treasurer in regular manner after the giving of the bond, and in the belief that his deposits were lawful. The conceded circumstances appearing in the record leave room for no other inference than that all these officers believed that their deposits were legal. The conduct of these various officers is evidence of the most satisfactory character of the fact of acceptance and approval of the bond. The one thing wanting, to make a perfect case *on paper,* was the failure of the treasurer and of the board of directors to enter a formal approval, either upon the bond or by formal resolution. The brief for the State is full of citation of authorities to the effect that the approval of such a bond may be established as a matter of fact by other satisfactory evidence than the formalities required by statute. How can it be said, therefore, that the bank officers received these deposits in bad faith, knowing them to be illegal? And yet this is one of the elements of the intervener's case. It is true, the board was under the duty of noting its formal approval. It was also under the statutory duty to note its *disapproval* within five days. It did not note such disapproval, nor is it now contended that there were any grounds for such disapproval. All these officers did, in fact, approve this bond, although they failed to furnish any written evidence of such approval by a formal indorsement or resolution. It will be noted that the claim of the intervener is established by the evidence of its self-stultifying officers. It is now to the interest of these officers of the school district to contend that their official acts were all illegal. To now accept their testimony, which is so thoroughly contradicted by their conduct, is to open a wide door to collusive conduct of officers to establish preferential claims as against other creditors, who could have no other means to contradict the witnesses than the inconsistency involved in their testimony. The substance of merit in this case, as distinguished from its mere formalities, weighs very strongly in

favor of the finding of the district court. I think it ought to be affirmed.

I am directed to say that Justices Faville and Morling join in this dissent.