L. A. ANDREW, State Superintendent of Banking, Appellee, v. IOWA SAVINGS BANK OF FORT DODGE et al., Appellants.

No. 41200.

MARCH 15, 1932.

Thomas & Loth, for appellants.

Helsell, McCall & Dolliver, for appellee.

ALBERT, J.—In 1911 the City of Fort Dodge took advantage of Chapter 61 of the Acts of the 33 G. A. (with some changes and modifications now Chapter 322, Code, 1931), in the creation of a Firemen's Pension Fund, with the necessary trustees as provided by statute, and there was passed into the hands of such trustees at that time a fund amounting to about $653. On the 13th day of December of that year, they placed the same in a savings account in the Iowa Savings Bank at four per cent interest, no certificate of deposit being issued therefor. This

fund remained in said bank, with numerous additions, and with interest credited to the account from time to time, until March 16, 1926. From the time of deposit until that date, no withdrawals whatever were made, but at this time occasion arose for the use of a part of the fund, and from thence on money was taken from this account and placed in an open checking account; and the amount thus transferred was about $2,800.

In the early part of January, 1931, the Iowa Savings Bank closed its doors and a receiver was duly appointed. At that time the books showed that there was $917.16 in this Firemen's Pension Fund in an open checking account, and $10,363.50 in the other account.

In February, 1931, the city treasurer of Fort Dodge and the trustees of this Firemen's Pension Fund of said city filed a petition and claim with the receiver of said bank alleging that all of the funds held by the bank belonging to this Pension Fund should be allowed as a preferred claim. The receiver classified this claim as an ordinary depositor's claim, and on the hearing before the court, this action of the receiver was confirmed, the court holding that this claim was not entitled to a preference but was an ordinary depositor's claim; hence this appeal.

■ The right of these trustees, while acting in good faith and with due prudence, to deposit this fund for safe-keeping, in the first instance, has long since been pronounced as the rule in this state. While the early decisions were to the contrary, they were overruled in the cases of Officer v. Officer, 120 Iowa 389, and Hunt v. Hopley, 120 Iowa 695, 696, and in many cases since that time, among which are: In re Estate of Workman, 196 Iowa 1108; Leach v. Beazley, 201 Iowa 337; Andrew v. Sac County State Bank, 205 Iowa 1248, l. c. 1256.

■ While the above is the fixed rule in this state, it is of little aid in determining the question before us, except that it disposes of the question as to the right of preference as to the $917.16 on deposit in the open account. As to this item we are disposed to think these trustees were warranted in carrying it in such open checking account for the purpose of meeting current demands and paying pensioners as provided by statute, hence as to this item the court was right in holding that no preference should be allowed therefor.

■ At this point it becomes necessary to determine the

status of the balance of the Firemen's Pension Fund on hand at the time the bank closed. Just what was the relation between these parties as to this fund? The appellee claims it was no more than an ordinary deposit in a bank which drew interest: the trustees claim it was in fact not a deposit in the ordinary sense, but a loan to the bank, or an investment.

One reason why this question is material is because of Section 6312, Code, 1931, which reads:

"The boards shall have power to invest any surplus left in such funds, respectively, at the end of the fiscal year, but no part of the funds realized from any tax levy shall be used for any purpose other than the payment of pensions. Investments shall be limited to interest-bearing bonds of the United States, of the state of Iowa, of any county, township, or municipal corporation of the state of Iowa. All such securities shall be deposited with the treasurer of the boards of trustees for safe-keeping."

We discussed the distinction between a deposit and a loan in. Hunt v. Hopley, 120 Iowa 695, at 699, where we referred to the case of Independent School District of Sioux City v. Hubbard, 110 Iowa 58, and quoted as follows:

" 'We are of opinion that, if certificates actually represented cash within the control of the treasurer, which could and would have been produced had the board of directors so demanded, they should be treated as money in a suit on the official bond.' "

In the Hunt case we then said:

"The distinction between a deposit and a loan is illustrated in that case (Independent School District v. Hubbard) for, while demand certificates of deposit on solvent banks were treated as equivalent to cash, time certificates bearing interest were denounced as private loans of public money, amounting to conversion. In Law's Estate, 144 Pa. 499 (22 Atl. Rep. 831, 14 L. R. A. 103), the difference was pointed out: 'Deposit is where a sum of money is left with a banker for safe keeping, subject to order, and payable, not in the specific money deposited, but in an equal sum. It may or it may not bear interest, according to agreement. While the relation between the de-

positor and his banker is that of debtor and creditor, simply, the transaction cannot, in any proper sense, be regarded as a loan, unless the money is left, not for safe keeping, but for a fixed period, at interest, in which case the transaction assumes the characteristics of a loan.' ''

We then quote with approval from State v. McFetridge, 84 Wis. 473, 54 N. W. Rep. 1, 998. The question there, as here, was whether or not it was a deposit or an investment under a statute similar to ours which prohibited investments of state funds. That court held that by such deposit the depositor does not lose control of the money, but may reclaim it at any time.

''True, he loses control of the specific coin or currency deposited, but not of an equal amount of coin or currency having the same qualities and value, which, as we have seen, is all that is required of him. But if the funds in the treasury are invested in United States or state bonds, or in loans on time to counties, cities, etc., the treasurer loses control thereof, and the same cannot be replaced in the treasury until such bonds are paid or sold, or such loans become due, and are collected by due course of law. The retention by the treasurer of substantial control over the funds in the one case, and his loss of such control in the other, make the leading distinction between a mere deposit of the funds and an 'investment' thereof, as those terms are used in the statutes.''

The turning point therefore in the determination of this case, under the doctrine we have approved in the Wisconsin case, is whether or not these trustees were at all times in position to immediately withdraw this fund from the bank; or whether they had lost control of it for any length of time. If the latter be true, then under the holdings, this must be held to be an investment or a loan, and not a deposit.

Turning to the record we find that the condition under which this money was turned over to the bank was that the bank was to pay four per cent interest semiannually, but it ''expressly reserved the right to have, as a condition precedent to the payment of any of the savings deposit, a sixty days' notice in writing from the depositor of his or her intention to withdraw his or her savings deposits, and no such deposits shall be payable either in whole or in part, prior to the expiration of the

sixty days' period of notice, unless at the option of the bank. * * * Payments from time to time by the bank without notice shall not constitute a waiver of notice in any other case, or at any other times when notice is not expressly waived."

It is apparent, therefore, from this condition in the agreement that the control of this fund so left with the bank wholly passed out of the control of the trustees. True, they could draw all or any part thereof with the permission of the bank, but if the bank failed to give such permission they could not draw the same until they had given notice and sixty days had fully expired.

In Baitinger v. Elmore, 208 Iowa 1342, we had a fund in the hands of a savings bank placed there by a guardian under the same sixty-day restriction as existed in the case at bar. We there said:

"* * * the guardian, in effect, and without authority, invested the money of his ward in a savings deposit, and precluded himself from withdrawing it except on sixty days' notice. Thus far the case is not one of a mere temporary deposit of money payable on demand in the exercise of ordinary care. The deposit was without authority of the court, and therefore was wrongful." (Citing Andrew v. Sac County State Bank, 205 Iowa 1248; Andrew v. Farmers Savings Bank of Goldfield, 207 Iowa 394; Garner v. Hendry, 95 Iowa 44).

While the control of this fund passed out of the hands of the trustees because they lost the right to immediately withdraw the same, the title to such fund never left them and the bank, under the law, was bound to know that it could not acquire legal title to said funds, and therefore, it must be held that it held such fund in trust for the actual owner. Leach v. Stockport Savings Bank, 207 Iowa 478, and cases therein cited; also Andrew v. Farmers Savings Bank of Goldfield, 207 Iowa 394.

The record shows that there was over $15,000 in cash in the vaults of the bank when it closed. Holding these funds in trust as it did as a Firemen's Pension Fund, under our holdings, the trustees of such fund are entitled to share said cash in the vaults of the bank with any and all other preferred creditors. If there be no other preferred creditors, they will realize in full; otherwise, the fund will have to be prorated.

The appellee insists, however, that if the law as heretofore specified governing these matters be true, the trustees having acted unlawfully in turning this fund over to the bank and the bank having acted unlawfully in receiving the same, under the well-known rule where parties are *in pari delicto,* the law will leave them where it found them, and therefore, the appellants are not entitled to any relief. As supporting this contention the appellee calls attention to the case of Incorporated Town of Conway v. Conway, 190 Iowa 563. We have allowed recovery as a preferred claim where a deposit was wrongful in Leach v. Stockport Savings Bank, 207 Iowa 478; Andrew v. Farmers Savings Bank of Goldfield, 207 Iowa 394; Andrew v. Winnebago County State Bank, 208 Iowa 392; Leach v. Farmers & Merchants Savings Bank, 202 Iowa 881; Page County v. Rose, 130 Iowa 296. That such recovery is allowed in other states under similar circumstances, see Mansfield v. Wardlow, 91 S. W. (Texas) 859; Hughes v. Hughes, 221 S. W. (Texas) 970; Wetmore v. Porter, 92 N. Y. 76; First National Bank of Paterson v. National Broadway Bank, 51 N. E. (N. Y.) 398.

We have predicated allowance of preference in too many cases in this court on the ground of wrongful deposit to now recede therefrom. What is said in Incorporated Town of Conway v. Conway, 190 Iowa 563, at 566, is purely dictum, and if not dictum, is hereby overruled.

Some other questions are discussed in the case, but we do not deem them of controlling importance.

The decree of the district court in holding that the trustees' claim for this Firemen's Pension Fund was an ordinary depositor's claim was right in so far as the item of $917.16 is concerned, but wrong as to the balance of the claim.—Affirmed in part; reversed in part.

WAGNER, C. J., and STEVENS, FAVILLE, and DE GRAFF, JJ., concur.