L. A. ANDREW, D. W. BATES, Supt. of Banking, Substituted Plaintiff, Appellant, v. UNION SAVINGS BANK & TRUST COMPANY, Defendant, SAM KELLY et al., as members of Board of Police Trustees, and R. A. KELLEY et al., as members of Board of Fire Trustees, Appellees.

No. 43627.

DECEMBER 15, 1936.

Cook & Balluff, for appellant.

Harold F. Thuenen, for appellees.

MITCHELL, J.—It is undisputed that Charles E. Robeson, city treasurer; F. A. Hass, city clerk; John C. Witt, city attorney; Harry Ward, chief of police, (or their successors in office) are trustees of the Policemen's Pension Fund of the City of Davenport; and that the first three, with Richard Kelley, chief of the fire department, (or their successors in office) are trustees of the Firemen's Pension Fund of said city, all under chapter 322, section 6310 et seq., and as trustees made the deposits hereinafter referred to.

The Union Savings Bank & Trust Company of Davenport, Iowa, closed its doors, and a receiver was appointed on December 28, 1932. At that time there was on deposit in said bank (including interest) $14,095.14 in the Policemen's Pension Fund, and $1,476.91 in the Firemen's Pension Fund, aggregating $15,572.05. These two accounts were treated as one fund and one claim in the receivership. No question as to this or the propriety of the proceedings to establish the claim has been raised by anyone.

For convenience we will speak of these two funds as the ''Policemen's Fund'' and the ''Firemen's Fund''.

After appointment of the receiver for the bank, claims were filed to compel the classification of these two accounts as preferred, and entitled to priority in payment, upon the ground that the money held in trust was deposited in a savings account by the trustees; that the bank had the right to require sixty days' notice in writing of its withdrawal, thus making it an illegal investment. The receiver denied that the claims were entitled to preference. An appeal was taken to the district court, which allowed the claims as preferred claims. The receiver, being dissatisfied, has appealed to this court.

It is stipulated that prior to the closing of the Union Savings Bank & Trust Company it had negotiated a loan from the Reconstruction Finance Corporation of an amount to pay forty per cent of its general deposit liabilities, and an additional sum of approximately $800,000, to be used for the payment of preferred claims which might be determined to be payable in full. The receiver classified all claims and filed a report, then made application for instructions and an order of court as to payment of claims. The decree, among other things, found that there were sufficient funds to cover all claims for preference which might be subsequently allowed and which included the claims in the case at bar. Therefore, we are not confronted with the question of whether there was sufficient money to pay these claims, it being admitted that there was.

When these two accounts were opened in the Union Bank they were both designated by certain numbers, and from that date to the date of the closing of the bank they continued to be known by these same numbers. At the time that the accounts were opened, pass books were issued by the Union Bank. The original pass books do not seem to be in evidence, but those of the Policemen's Fund covering the period from 1920 to the closing of the bank, were introduced in evidence. The first four of these pass books show that they were designated as being in the "savings" department, and in them were printed rules and regulations, Rule No. 9 being as follows:

"* * * This Bank reserves the right to withhold the payment of deposits until the expiration of sixty days' notice given in writing by the depositor of his or her intention to withdraw his or her deposit. The Bank may, so far as it is found advisable, pay without notice any depositors who wish to withdraw

their deposits. Payments made from time to time by the Bank without notice shall not constitute a waiver of notice.''

This record shows that there was no change in the account known as the Policemen's Fund from the time that it was first opened in 1910 until the Union Bank closed. It was designated by the same number and the bank book showed it was a continuous account. In addition to this there is the testimony of the city officials who had charge of the making of the deposits that there had been no change.

As to the Firemen's Fund, pass books were also issued, but the original ones were not introduced in evidence. However, those showing deposits starting in 1920 and continuing thereafter, were produced. These pass books, until 1922, also contained a sixty-day withdrawal clause, being identical with the clause contained in the books covering the Policemen's Fund that is set out in this opinion. There was no change in this account. It was designated by the same number and was a continuous account from the first deposit to the closing of the bank.

In the case of Andrew v. Iowa Savings Bank, 214 Iowa 105, 241 N. W. 412, 413, this court had before it a similar question, namely, whether or not a deposit made by the trustees of a pension fund in a bank is entitled to preference. Justice Albert, speaking for the court, said at pages 109, 110:

''The turning point therefore in the determination of this case, under the doctrine we have approved in the Wisconsin case [State v. McFetridge, 84 Wis. 473, 54 N. W. 1, 998, 20 L. R. A. 223], is whether or not these trustees were at all times in position to immediately withdraw this fund from the bank; or whether they had lost control of it for any length of time. If the latter be true, then under the holdings, this must be held to be an investment or a loan, and not a deposit.

''Turning to the record we find that the condition under which this money was turned over to the bank was that the bank was to pay four per cent interest semiannually, but it 'expressly reserved the right to have, as a condition precedent to the payment of any of the savings deposit, a sixty days' notice in writing from the depositor of his or her intention to withdraw his or her savings deposits, and no such deposits shall be payable either in whole or in part, prior to the expiration of the sixty days' period of notice, unless at the option of the bank. * * * Payments

from time to time by the bank without notice shall not constitute a waiver of notice in any other case, or at any other times when notice is not expressly waived.'

"It is apparent, therefore, from this condition in the agreement that the control of this fund so left with the bank wholly passed out of the control of the trustees. True, they could draw all or any part thereof with the permission of the bank, but if the bank failed to give such permission they could not draw the same until they had given notice and sixty days had fully expired.

"In Baitinger v. Elmore, 208 Iowa 1342, 1344, 277 N. W. 344, 346, we had a fund in the hands of a savings bank placed there by a guardian under the same sixty-day restriction as existed in the case at bar. We there said:

" '* * * the guardian, in effect, and without authority, invested the money of his ward in a savings deposit, and precluded himself from withdrawing it except on sixty days' notice. Thus far the case is not one of a mere temporary deposit of money payable on demand in the exercise of ordinary care. The deposit was without authority of the court, and therefore, was wrongful.' (Citing Andrew v. Sac County State Bank, 205 Iowa 1248, 218 N. W. 24; Andrew v. Farmers Savings Bank of Goldfield, 207 Iowa 394, 223 N. W. 249; Garner v. Hendry, 95 Iowa 44, 63 N. W. 359.)

"While the control of this fund passed out of the hands of the trustees because they lost the right to immediately withdraw the same, the title to such fund never left them and the bank, under the law, was bound to know that it could not acquire legal title to said funds, and therefore, it must be held that it held such fund in trust for the actual owner. Leach v. Stockport Savings Bank, 207 Iowa 478, 223 N. W. 171, and cases therein cited; also Andrew v. Farmers Savings Bank of Goldfield, 207 Iowa 394, 223 N. W. 249."

[██] In the case at bar we find that these accounts were opened in the Union Bank by the trustees of these funds; that pass books showing deposits were duly issued and that they contained the provision that withdrawals could not be made except upon sixty-days' notice if the bank desired. This is the same identical provision referred to in the case of Andrew v. Iowa Savings Bank, supra. The bank paid interest upon these accounts.

Each one was numbered and was carried in the savings department of the Union Bank as a savings account. Nowhere, and at no time, does a change in the character of these accounts appear. Even the ledger sheets used by the bank are the same and no change is noted on them. The fact that the bank did permit checks to be drawn upon these accounts does not in any way change the nature of the accounts, as the bank reserved that right, under the rules and regulations printed in the pass books. If the bank failed to give such permission, then the trustees could not draw money until they had given notice and sixty days had fully expired. Under these facts it must be held that this was an investment or a loan and not a deposit, and the trustees of these pension funds had no authority to so invest the money.

██ Appellant strenuously argues that, under section 9178 of the 1931 Code, which is as follows:

"9178. Regulations—posting. Said regulations shall be printed and conspicuously exposed in the business office of the bank, in some place accessible and visible to all; and no alteration which may at any time be made in such rules and regulations shall affect the rights of depositors acquired previously thereto in respect to deposits or interest thereon."

there is no evidence that the board of directors of the Union Savings Bank ever adopted any regulations requiring notice of withdrawal of savings deposits, and that the printing of such regulations in the pass book cannot make the regulation effective; in order to comply with section 9178 it was necessary for the bank to post notice conspicuously in its business office. However, it is to be noted there is nothing in the statute to preclude the giving of a binding notice to a depositor of those rules and regulations in some manner other than by posting, or to preclude the bank and a depositor from attaching conditions to their deposit agreement. To hold otherwise would be to hold that actual notice of such rules and regulations would mean nothing.

In Brooke v. White, 219 Iowa 624, 258 N. W. 766, 768, Justice Powers, speaking for this court, said at page 629:

"The interpretation finds support also in the decisions of this court. In Andrew v. Iowa Savings Bank, 214 Iowa 105, 241 N. W. 412, we held that the bank could demand a sixty-day

notice, but not because of the provision of the statute, but because the bank had adopted such a regulation which was a part of the contract between the bank and the depositor.''

In the case at bar there was an agreement between the bank and the depositor that gave the bank the right to demand a sixty-days' notice if it desired.

Section 9178 can mean no more than to say that posting of the rules and regulations is necessary to bind the bank and depositor if no other notice is given to the depositor. But actual knowledge on his part of the rules and regulations will bind the depositor just as effectively as if posted. The pass books were issued by the bank itself. The rules and regulations printed in them are designated as such. Entries in them were made by the officers and employees of the bank. Claimants had actual knowledge of the rules and regulations. They were bound by these rules, and likewise the bank was bound. The trustees had no authority to place the money in a savings account in the Union Bank. It was therefore an illegal investment, and the claimants were entitled to preference.

It therefore follows that the lower court was right in entering the order, adjudging and decreeing these to be preferred claims.

Judgment is hereby affirmed.—Affirmed.

Parsons, C. J., and all Justices, concur.